# FIREMAN'S FUND INSURANCE COMPANY OF WISCONSIN, New Hampshire Insurance Company and Tower Insurance Company, Plaintiffs-Respondents-Cross-Appellants,†

### v.

# PITCO FRIALATOR COMPANY, INC., Appellant-Cross-Respondent,

# SILENT KNIGHT SECURITY SYSTEMS OF WISCONSIN, INC., Defendant.

Court of Appeals

*No. 87–1087. Submitted on briefs March 15, 1988.—Decided June 21, 1988.*

(Also reported in 427 N.W.2d 417.)

† Petition to review denied.

For appellant-cross-respondent there were briefs by *John H. Hendricks* and *Donald J. Gillen* of *Gee, Hendricks, Knudson & Gee, S.C.* of Superior

For plaintiffs-respondents-cross-appellants there were briefs by *Joe Thrasher* of *Weisel, Thrasher, Doyle & Pelish, Ltd.* of Rice Lake

For the Wisconsin Commissioner of Insurance and the Wisconsin Insurance Security Fund, there was an amici curiae brief: For the Wisconsin Commissioner of Insurance, by *Donald J. Hanaway,* attorney general, and *Warren Weinstein,* assistant attorney general; for the Wisconsin Insurance Security Fund, by *Jonathan C. Aked* and *Christopher J. Wilcox* of *La Follette & Sinykin* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Pitco Frialator Company appeals a denial of summary judgment.[1] The trial court determined that Wisconsin's Insurance Security Fund law, ch. 646, Stats., does not prohibit a subrogated insurance company from exercising its right of subrogation directly against an individual insured whose insurer has become insolvent. We conclude that, to the extent of the policy limits, no subrogation claim may lie against the individual insured. Because the damages did not exceed the policy limits in this case, we reverse and remand with directions to enter judgment in favor of Pitco.

The subrogated insurers also cross-appeal an order vacating an earlier default judgment. We conclude that the trial court properly exercised its discretion in finding excusable neglect and inadver-

[1]We granted leave to appeal the nonfinal order on July 15, 1987.

tence on the part of Pitco. Accordingly, that order is affirmed.

The principal facts are undisputed. On April 21, 1983, a fire started in the kitchen of Zhivago's Restaurant and Bar in the Engebretson Building located in Spooner. As a result of the fire, the Engebretson Building, which was leased by Zhivago's and insured by Fireman's Fund Insurance Company, was damaged to the extent of $50,227. The contents of the building and the business operated by Zhivago's, which were insured by the New Hampshire Insurance Company, were damaged in the amount of $59,493.82. Additionally, the building adjacent to the Engebretson Building, which was insured by Tower Insurance Company, sustained smoke damage in the sum of $5,480.70. Fireman's Fund, New Hampshire Insurance, and Tower Insurance, under the terms of their policies, paid the above amounts and obtained assignments of the rights of their insureds to the extent of payments.

The subrogated insurers then initiated the present action against Pitco, alleging that a deep fryer manufactured by Pitco overheated and caused the fire. Pitco's insurance carrier, Ideal Mutual Insurance Company, became insolvent subsequent to the time of the accident. Because Pitco was a New Hampshire company, the New Hampshire Guaranty Insurance Fund undertook Pitco's defense pursuant to its statutory authority.

New Hampshire's Insurance Guaranty Association statute expressly prohibits a subrogated insurer from pursuing a cause of action against an insured whose insurer has become insolvent. *See* N.H. Rev. Stat. Ann., sec. 404–B:5.IV (1983). The subrogated insurers argue, however, that such an action is not

specifically prohibited under Wisconsin law. Although acknowledging that recent decisions in other jurisdictions involving insurance guaranty associations have rejected similar arguments, the subrogated insurers assert that, unlike Wisconsin, those jurisdictions prohibit such claims by express statutory language. *See, e.g., E.L. White, Inc. v. City of Huntington Beach,* 138 Cal. App. 3d 366, 187 Cal. Rptr. 879 (1982); *Cordani v. Roulis,* 395 So. 2d 1276 (Fla. App. 1981); *See also* Annotation, *Validity, Construction, and Effect of Statute Establishing Compensation for Claims Not Paid Because of Insurer's Insolvency,* 30 A.L.R.4th 1110, 1115 (1984).

Whether the Wisconsin Insurance Security Fund law prohibits such an action involves an interpretation of ch. 646. The interpretation of a statute involves questions of law. We decide such questions independently, without deference to the trial court's determination. *See Sunnyview Village, Inc. v. Department of Admin.,* 104 Wis. 2d 396, 402, 311 N.W.2d 632, 635 (1981). Our purpose in interpreting a statute is to ascertain and give effect to the intent of the legislature. *State v. Denter,* 121 Wis. 2d 118, 122, 357 N.W.2d 555, 557 (1984).

The present case is analogous to *Sandson's Bakery v. Glover,* 392 A.2d 640 (N.J. Super. 1978). In *Sandson's,* the New Jersey insurance guaranty association statute, N.J. Stat. Ann., sec. 17:30A–5(d), provided that: "'covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association ...." *Sandson's,* 392 A.2d at 641. However, the subrogated insurers in that case argued that the statute did not expressly prohibit a subrogation action directly against an individual insured. The

insurers contended that the section did no more than define what class of claims were "covered claims" under the fund. *Id.* at 641.

The court held that the clear intent of the legislature prohibited subrogation claims against an individual insured of an insolvent insurance company. *Id.* Despite the fact that the subsection did not specifically prohibit subrogation against the individual defendant, the court stated:

> It is clear that the intention of the Legislature, when enacting this act, was to provide protection from insolvent insurers not only to innocent injured third parties, such as plaintiff, but also to those insured by an insurer that becomes insolvent. N.J.S.A. 17:30A–2(a) entitled, "Purpose," states that "The purpose of this Act is to provide a mechanism for the payment of covered claims under certain insurance policies ... , to avoid financial loss to claimants or policyholders because of the insolvency of an insurer ... , and to provide an association to assess the cost of such protection among insurers.

*Id.* (emphasis omitted).

Similarly, the primary purpose of the Wisconsin Insurance Security Fund, as stated in sec. 646.01(2)(a), reflects an identical intention designed to protect insureds of insolvent companies:

> (2) Purposes. The purposes of this chapter are:
>
> (a) To maintain public confidence in the promises of insurers by providing a mechanism *for protecting insureds from* excessive delay and *loss in the event of liquidation of insurers* and by assessing the cost of such protection among insurers .... (Emphasis added.)

To require the insured to satisfy a judgment from its own assets undermines the basic purpose of the statute, and circumvents the clear command of the legislature. The overriding purpose in creating the statute was to protect just such a party as Pitco, the insured of an insolvent insurer. *See E.L. White,* 138 Cal. App. 3d at 371, 187 Cal. Rptr. at 882.

The insurers insist that they are subrogated as a matter of law by application of common law principles of equity. They argue that statutes are not to be construed as modifying the common law unless such a purpose is expressed by clear, unambiguous, and peremptory language. *E.g., Leahy v. Kenosha Mem. Hosp.,* 118 Wis. 2d 441, 449, 348 N.W.2d 607, 612 (Ct. App. 1984).

We disagree. We reiterate that the clear and unambiguous purpose of ch. 646 is to protect insureds from losses occasioned by the insolvency of their insurance company. Unlike the cases the insurers rely upon involving civil liability under safety statutes, the Wisconsin Insurance Security Fund law is a remedial statute which must be construed to give effect to its leading idea and must be brought into harmony with its purpose.[2]

Accordingly, we conclude that the legislature intended to prohibit subrogation claims, to the extent of the policy limits, against an insured of an insolvent insurance company. We need not reach the issue

[2]We also note that the rights of the insurers were obtained pursuant to written assignment rather than common law subrogation. Section 646.31(2)(e), Stats., provides that a claim may be paid by the guaranty association if the claim is "the claim of a direct or indirect assignee, *other than an insurer* ...." (Emphasis added).

concerning whether the Wisconsin or New Hampshire statute applies to the present case because there is no conflict of laws. Under either state's laws, the action is prohibited. *See American Standard Ins. Co. v. Cleveland,* 124 Wis. 2d 258, 261–62, 369 N.W.2d 168, 170–71 (Ct. App. 1985).[3]

■

Regarding the cross-appeal, we conclude that the trial court did not abuse its discretion by vacating the earlier default judgment. Default judgments are regarded with particular disfavor, and the law prefers whenever reasonably possible to afford litigants a day in court. *See Dugenske v. Dugenske,* 80 Wis. 2d 64, 68, 257 N.W.2d 865, 867 (1977).

The subrogated insurers argue that, as a matter of law, the initial failure to answer the complaint does not constitute excusable neglect upon which discretion may operate. The insurers insist that the issue is controlled by *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 326 N.W.2d 727 (1982).

*Hedtcke* does not support the conclusion that default judgment was required as a matter of law. In *Hedtcke,* the order granting Sentry's motion for an enlargement of time to file an answer failed to assert sufficient grounds for granting the motion. Additionally, the record revealed that the press of other legal business prevented the attorney from serving an

---

[3]The subrogated insurers also argue that ch. 646 does not apply to product liability insurance "provided to a purchasing or a member of a purchasing group operating under 15 U.S.C. 3901 to 3904." *See* sec. 646.01(1)(b)8, Stats. However, the record contains no facts indicting that Pitco was a member of a purchasing group which "has as one of its purposes the purchase of product liability [insurance] . . . on a group basis," as required under 15 U.S.C. 3901(a)(5).

answer. The court stated that as a matter of law, the press of other legal business does not constitute excusable neglect. *Id.* at 472–73, 326 N.W.2d at 733.

Here, on the other hand, Pitco turned the summons and complaint over to its insurance agency to obtain representation in accord with its usual practice. The agency, for unexplained reasons, failed to forward the file. As the trial court pointed out, Pitco could have exercised more diligence by conducting follow-up procedures. However, in light of past practice, which operated sufficiently prior to this occasion, we cannot say that the trial court abused its discretion by finding excusable neglect on the part of Pitco.

*By the Court.*—Orders affirmed in part, reversed in part, and cause remanded with directions. No costs on appeal to either party.