PENNSYLVANIA INSURANCE
GUARANTY ASSOCIATION

v.

CHARTER ABSTRACT CORPORATION
and William Attardi

v.

SAFECO TITLE INSURANCE
COMPANY.

Civ. A. No. 89–7433.

United States District Court,
E.D. Pennsylvania.

March 23, 1992.

Arthur J. Murphy, Jr., Monica Maghrak, Jeannine Schuster, Murphy, Taylor, Trout & Chester, P.C., Philadelphia, Pa., Donald M. Grimes, Kelly, Grimes, Pietrangelo & Vakil, Media, Pa., for Pennsylvania Ins. Guar. Ass'n.

Walter Weir, Jr., Daniel S. Bernheim, III, Patterson & Weir, Philadelphia, Pa., for William Attardi.

Don P. Foster, Rubin, Quinn, Moss, Heaney & Patterson, Philadelphia, Pa., for Safeco Title Ins. Co.

## MEMORANDUM AND ORDER

BECHTLE, Chief Judge.

### INTRODUCTION

The Equity General Insurance Company ("Equity") originally brought this declaratory judgment action seeking a declaration that it is not obligated to defend or indemnify the Charter Abstract Insurance Corporation ("Charter") or William Attardi, Jr. ("Attardi") under professional liability insurance policy EST00216 ("Policy"). The Pennsylvania Insurance Guaranty Association ("PIGA") was substituted as plaintiff after the Circuit Court of Cook County, Illinois entered an Order of Liquidation With a Finding of Insolvency against Equity. Safeco Title Insurance Company ("Safeco")[1] is intervening as defendant. PIGA requests a declaration of rights and obligations under the Policy and under the Pennsylvania Insurance Guaranty Association Act. Presently before the court are cross motions for summary judgment. For the reasons set forth below, PIGA's motion for summary judgment will be granted and Safeco's cross-motion for summary judgment will be denied.

### BACKGROUND

In 1986, Portico Partners ("Partners") purported to close on an agreement to purchase certain real estate in the city of Philadelphia. The seller was Portico Place Limited Partnership ("Portico Place"). Charter was present to provide title insurance services. Charter was represented by Attardi and was authorized to commit Safeco to issue title insurance on the property. Safeco is a Maryland corporation in the business of insuring title to real estate and operates primarily through the use of agents, such as Charter. The agency relationship between Safeco and Charter is set forth in their Issuing Agency Agreement ("Agency Agreement").

The agreed upon purchase price for the property was approximately $900,000. The buyer committed to a down payment of $176,000 and a purchase money mortgage taken back by the seller for the balance of the purchase price. Attardi committed Safeco to insure the buyers' title free and clear of all liens and handled the collection and distribution of the proceeds and the transfer and recording of deeds.

In April, 1987, Portico Place filed suit in the Pennsylvania Court of Common Pleas against Partners to rescind the sale and placed a *lis pendens* on the property.[2] Partners, meanwhile, filed suit in this court against Safeco pursuant to the title insurance policy seeking, *inter alia,* insurance coverage for losses suffered as a result of insured-against liens and encumbrances on the property ("Breisch action").[3] Partner's complaint contained allegations of conspiracy, misrepresentation, negligence, breach of contract, and breach of insurance commitment. Safeco denied liability and filed a Third-Party Complaint against Charter and Attardi. Safeco claimed that certain errors and omissions by Attardi at the closing constituted a breach of the Agency Agreement. Specifically, Safeco alleged that Attardi, on behalf of Charter, (a) insured over existing liens without verifying whether or not the liens were satisfied; (b) accepted power of attorney from seller that created a conflict of interest; (c) issued a title policy commitment for an amount in excess of the limitation imposed on Charter by Safeco; and (d) failed to verify the authority of an individual who claimed to represent the seller at closing. On November 19, 1989, after trial began but before a verdict was reached, Safeco settled the

1. Safeco changed its name to the Chicago Title Insurance Co. of Maryland during the pendency of this action. For the purposes of this Memorandum and accompanying Order, the court will continue to refer to the company as "Safeco."

2. *Agai v. Portico Partners v. Charter Abstract and Attardi,* No. 4969 April Term 1987, Court of Common Pleas of Philadelphia, PA.

3. *Robert D. Breisch, et al, v. Safeco Title Insurance Corp. and William Attardi and Charter Abstract Corp.,* No. 87-7069, 1990 WL 209334 (E.D.Pa.).

claim of Portico Partners for $197,500. Safeco's Third–Party complaint against Charter and Attardi proceeded to trial before a jury. After Safeco presented its case, the court issued a directed verdict in favor of Attardi. The jury ultimately found in favor of Safeco and against Charter in the amount of $432,332.23.

The Agency Agreement between Safeco and Charter required Charter to purchase errors and omissions insurance. Charter purchased this insurance from Equity. Equity instituted the instant proceeding against Charter and Attardi seeking a declaration that it is not obligated to provide errors and omissions insurance coverage to its insured for potential losses resulting from the actions of Attardi. Equity, thereafter, was liquidated by the state of Illinois. PIGA is substituting for Equity as plaintiff.

PIGA filed a motion for summary judgment asserting that it is entitled to judgment as a matter of law because (1) Safeco's claim is not a "covered claim" under the Act because (a) Safeco is not a resident of Pennsylvania as defined by the Act and (b) the Act precludes recovery by "insurers;" (2) the Policy does not provide coverage for intentional torts; and (3) certain Policy exclusions exclude claims against both Charter and Attardi.

Safeco filed a cross-motion for summary judgment seeking the court to declare that (1) Safeco's claim against Charter is covered by the Policy; (2) Safeco's claim against Charter is a "covered claim" within the provisions of the Act; (3) the applicable policy limits are $500,000; and (4) no Policy exclusions preclude recovery on Safeco's claims.

DISCUSSION

The Pennsylvania Insurance Guaranty Association Act ("Act"), 40 PA.STAT.ANN. § 1701.101 et seq. (1971), was enacted to protect claimants or policyholders, in certain circumstances, from financial loss brought about by the insolvency of insurers. See Bethea v. Forbes, 519 Pa. 422, 424, 548 A.2d 1215, 1216 (1988). The Act states as among its purposes: "To provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims, and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." Id. at § 1701.102. The Act created PIGA to implement the provisions of the Act and to pay covered claims. PIGA's duty to undertake the obligations of insolvent insurers is limited to those claims that are "covered" under the Act. The Superior Court of Pennsylvania has commented that the Act "does not intend to place a claimant in all cases in the same position she would have been had the insurance company remained solvent. The Act creates a means by which limited recovery may be had in instances where none would have been possible due to the insolvency. Where the Act explicitly denies a recovery, creates an immunity, or bars a cause of action, that provision must be strictly construed." Schreffler v. Pennsylvania Ins. Guar. Ass'n, 402 Pa.Super. 309, 586 A.2d 983, 985, app. denied, 600 A.2d 196 (1991).

■ The Act defines a "covered claim," in relevant part, as:

[A]n unpaid claim, including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer and is:

(i) The claim of a person who at the time of the insured event resulting in loss or liability was a resident of this Commonwealth....

§ 1701.103(5)(a). Safeco's claim can only be considered "covered," then, if Safeco is deemed a "resident" of Pennsylvania for purposes of the Act. Unfortunately, the Act leaves the term "resident" undefined.

Safeco admits that it is neither incorporated under the laws of Pennsylvania, nor is its principal place of business in Pennsylvania. Safeco argues that it should be considered a resident, nonetheless, on the basis that it fulfills all of the requirements for foreign corporations and that it is registered to do business, pays taxes, and maintains a permanent place of business in Pennsylvania. Safeco's position necessitates a determination that a corporation

may have more than one residence for purposes of the Act.

PIGA, on the other hand, without addressing whether the Act contemplates more than one residence, argues that a corporation is limited to at most two, and that the court's focus should be confined to Safeco's state of incorporation or where it conducts its principal place of business, both of which are in Maryland. According to PIGA, any contacts Safeco may have with Pennsylvania are irrelevant.

The term "resident," when applied to a corporation, creates interpretational problems. The concept of residence is generally considered to be an attribute of a natural person and cannot easily be applied to a corporation, which is a legislatively created entity existing merely in the abstract. *See* 18 AM.JUR.2D *Corporations* § 305 at 216 (1968) ("[a] corporation is a mere ideal existence, subsisting only in contemplation of law—an invisible being that can have, in fact, no locality and can occupy no space, and therefore cannot have a dwelling place.").

■ It is the settled rule that, insofar as a corporation can be considered a resident of a state, it is a resident of the state in which it is incorporated, and no other. *See* 17 FLETCHER CYCLOPEDIA CORPORATIONS § 8300 at 27 (1987); 36 AM.JUR.2D *Foreign Corporations* § 34 at 49 (1968); 8A PENNSYLVANIA LAW ENCYCLOPEDIA *Corporations* § 45 at 144 (1971). The legislative bodies that create a corporation retain the power to define its residence by statute for particular circumstances, however. The general rule is as follows:

> Statutes granting powers, privileges or immunities to 'corporations,' without any qualifying word, will be construed as applicable only to domestic corporations in the absence of plain indications to the contrary, or unless the legislative intent that the statute shall extend to foreign corporations is clearly expressed in the terms of the statute.

17 FLETCHER CYCLOPEDIA CORPORATIONS § 8301 at 34 (1987). By using the qualifying term "resident," the Pennsylvania Legislature conspicuously refrained from limiting covered claims to domestic corporations. Thus, the definition of "resident" becomes one of statutory construction. In such situations, residency must be determined by the context, purpose, and objective of the statute in which the term is used as well as the extent and character of the business the corporation transacts within the state. 17 FLETCHER CYCLOPEDIA CORPORATIONS § 8301 at 34 (1987); AM.JUR.2D *Foreign Corporations* § 37 at 52 (1968). Hence, the meaning of "residence" may vary from statute to statute.

■ Research has revealed only three cases in which courts were required to define residency in the context of insurance guaranty acts. While these state court decisions are not binding upon the court, the statutes discussed therein and the Act are essentially uniform and contain virtually identical residency provisions; consequently, the court shall afford them appropriate deference. *See Pennsylvania v. Brown*, 260 F.Supp. 323, 352 (E.D.Pa.1966) (in interpreting statutes similar to or adopted from laws of other states courts, construction given those statutes by courts of that state "while not conclusive, are certainly persuasive"). *Cf. Commonwealth v. National Bank & Trust Co.*, 469 Pa. 188, 364 A.2d 1331, 1335 (1976) (other states' interpretation "entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme").

In *Eastern Seaboard Pile Driving Corp. v. New Jersey Property–Liability Ins. Guar. Ass'n*, 175 N.J.Super. 589, 421 A.2d 597 (1980), the Superior Court of New Jersey rejected the lower court's decision that the statutory language concerning residence in New Jersey's guaranty act contemplated only domestic corporations, and held that a corporation which was incorporated under the laws of Delaware but maintained its executive offices and principal place of business and conducted substantially all of its business in New Jersey, was a New Jersey resident for the purpose of the statute and could maintain a covered claim.

The Supreme Court of Alabama, on the other hand, in *Alabama Ins. Guar. Ass'n v. Colonial Freight Systems, Inc.*, 537 So.2d 475 (Ala.1988), held that a corporation which was incorporated under the laws of Alabama was a resident for purposes of Alabama's insurance guaranty act, notwithstanding the fact that it maintained its principal place of business in Tennessee.

At first glance, these two cases appear to be inconsistent—that is not necessarily so. In neither case did the court discuss whether corporations could have more than one residence for purposes of the respective guaranty acts. For example, although in *Colonial Freight* the corporation at issue was deemed a resident of Alabama because Alabama is the state in which it is incorporated, the court did not address whether the corporation would also be deemed a resident of Tennessee, the state in which it maintained its principal place of business. Likewise, in *Eastern Seaboard*, while the court rejected the notion that only domestic corporations could recover under the act, it did not expressly limit residence to the state in which a corporation maintains its principal place of business.

In *Kroblin Refrigerated Xpress, Inc. v. Iowa Ins. Guar. Ass'n*, 461 N.W.2d 175 (Iowa 1990), however, the Iowa Supreme Court thoroughly discussed this issue. In *Kroblin*, plaintiff corporation, a provider of interstate transportation of food products, was incorporated and originally maintained its corporate offices in Iowa. The company enjoyed substantial growth and eventually operated in forty-eight states and owned offices and real estate in several states. In January, 1985, it moved its corporate offices to Oklahoma without changing its corporate status in Iowa. In August, 1985, one of the company's vehicles was involved in an accident which resulted in multiple fatalities. When, a few months later, the company's insurance carrier was declared insolvent, the company filed for voluntary chapter 11 bankruptcy in Oklahoma and applied for coverage from the Iowa Insurance Guaranty Association ("Iowa Association"). The Iowa Association denied coverage on the ground that the company did not fulfill the residency requirement.

The Iowa Supreme Court held that under the Iowa insurance guaranty statute, a corporation can have only one residence, which is the site of its principal place of business regardless of its charter state or the number of states in which it conducts business. *Id.*, 461 N.W.2d at 179. In determining that the statute permits only one residence, the court recognized that a corporation may have multistate residences for certain purposes and may purchase insurance in states other than its principal place of business. The court concluded, nevertheless, that the legislature intended that a person or corporation could have only one residence when it included the requirement that an insured having a claim against more than one insurance guaranty association must first seek recovery from the guaranty association of its state of residence. *Id.*

In reaching its decision that a corporation's residence is the site of its principal place of business, the court reasoned that the legislature intended a correlation between the payment of claims and collection of assessments, which are derived from premiums collected on property located in Iowa or from insureds who pay their premiums in Iowa. Finally, the court stated that:

> [W]e can perceive of no valid reason why the legislature would treat corporations differently from individuals. For an individual, residence refers to a place of abode requiring only bodily presence to be an inhabitant of a given place. Residence has no nexus to where the individual was born. Presumably, an individual purchases and pays for insurance premiums from a place of residence. Likewise, a corporation's charter state does not necessarily have any connection with the state where it buys insurance and pays premiums. Decisions to buy insurance and pay premiums logically originate where corporate business is conducted—the corporation's nerve center.

*Id.* (citation omitted). The court also observed that the legislature would have no reason to treat a residence of a corporation any differently than that of an individual.

As a person who moved from one state to another would no longer be a resident of the former state, neither would a corporation that changed its principal place of business to one state from another. *Id.*

Of the three cases, only *Kroblin* expressly held that both individuals and corporations can have only one residence for purposes of the statute, regardless of how residence is defined, ie., whether residence is defined by principal place of business or by state of incorporation, that definition provides the *sole* criterion for determining residence.

The court agrees with the Iowa Supreme Court in that corporations, like individuals, have only one residence for purposes of the guaranty acts. Section 1701.503 of the Act states that "[a]ny person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured...." This provision, as the Iowa Supreme Court recognized, contemplates that an individual has but a singular residence. The court also fails to see why corporations should be treated any differently from individuals.

■ The court need not decide the issue of whether residence should be defined by either state of incorporation or by principal place of business, since Safeco meets neither criterion in that it is a Maryland corporation that maintains it principal place of business in Maryland. Consequently, the court holds that Safeco is not a resident of Pennsylvania under the Act, and, therefore, cannot bring a "covered" claim.[4] As a result, PIGA's motion for summary judgment will be granted and Safeco's cross-motion for summary judgment will be denied.

An appropriate Order will be entered.[5]

## ORDER

AND NOW, TO WIT, this 23rd day of March, 1992, upon consideration of the following motions, IT IS ORDERED that:

1. Pennsylvania Insurance Guaranty Association's motion for summary judgment against Safeco Title Insurance Company is *granted;*

2. Pennsylvania Insurance Guaranty Association's motion for summary judg-

---

**4.** Even had Safeco been deemed a resident of Pennsylvania, it nonetheless could not maintain a covered claim because it is an "insurer." The Act explicitly denies coverage sought by insurers: "A covered claim shall not include any amount due any insurer, reinsurer, insurance pool, or underwriting association, as a subrogation recovery or otherwise." 40 Pa.Stat.Ann. § 1701.103(5)(b). Safeco argues that title insurance companies are excluded from the Act's definition of "insurer." An "insurer" is defined as "any insurance company, association or exchange which is authorized to write and is engaged in writing within this Commonwealth, on a direct basis, property and casualty insurance policies." 40 Pa.Stat.Ann. § 1701.103(2). According to Safeco, since title insurance is one of several types of insurance which are expressly excluded from the definition of "property and casualty insurance policies," 40 Pa.Stat.Ann. § 1701.103(3), the legislature must have intended to exclude from the definition of insurer companies which issue the excluded types of insurance. The court does not agree. The definition of property and casualty insurance is aimed at defining those categories of insurance which the Act intends to protect, and it does not appear that the legislature intended that definition to be read with the definition of insurer and limit the entities which may make claims

under the Act. Had the legislature intended to so limit the definition of insurer, it could have done so. Safeco's position also contravenes the intent of the Act, which is to protect injured policy holders, not insurers. Furthermore, the clear weight of authority stands for the proposition that carriers of excluded insurance are still deemed insurers for purposes of the guaranty acts and may not recover from the funds. *See e.g., Sussman v. Ostroff,* 232 N.J.Super. 306, 556 A.2d 1301, 1305 (A.D.) ("the insurance industry itself bears the risk of loss of its own direct claims against the insolvent carrier"), *certif. denied,* 117 N.J. 143, 564 A.2d 865 (1989); *Fireman's Fund Ins. Co. v. Pitco Frialator Co.,* 145 Wis.2d 526, 427 N.W.2d 417 (1988) (fire casualty insurance company deemed an "insurer"); *Kinney v. Leaman,* 14 Mass.App. 926, 436 N.E.2d 996 (1982) (loss must be absorbed by workmen's compensation insurer); *Ferrari v. Toto,* 383 Mass. 36, 417 N.E.2d 427, 429 (1981) ("to place the loss on the workmen's compensation insurer providing benefits to [plaintiff] rather than on the Fund is consistent with the legislative intent and is not inconsistent with any demonstrated public policy").

**5.** In view of court's holding, it is not necessary to address issues concerning policy exclusions.

ment against William Attardi is *granted,* as Attardi is not a resident of Pennsylvania;

3. Safeco Title Insurance Company's cross-motion for summary judgment is *denied;* and

4. Safeco Title Insurance Company's motion to amend caption is *dismissed as moot.*