607 So.2d 834 (1992)
CASUALTY RECIPROCAL EXCHANGE
v.
Michele S. DUKARIE and Champion Insurance Company.
No. CA 91 1513.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
Writ Denied December 21, 1992.
*835 Boris F. Narratil, David Hardy, Baton Rouge, for plaintiff-appellant.
William E. Willard, Baton Rouge, for defendant-appellee.
Geraldine Fontenot, Baton Rouge, for third party defendant-appellee.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
EDWARDS, Judge.
The issue in this suit for monetary damages is whether a subrogated insurer and member of the Louisiana Insurance Guaranty Association, who brought suit against the insured of an insolvent carrier before the 1990 amendment to LSA-R.S. 22:1379(3) specifically excluding the insured from such a suit, can enforce its subrogation claim. We agree with the trial court that such a claim was prohibited and affirm the trial court's judgment.

FACTS AND PROCEDURAL BACKGROUND
Plaintiff-appellant, Casualty Reciprocal Exchange (Casualty), the liability insurer for Paige Stevens, filed suit against defendant-appellee Michele Dukarie and her insurer, Champion Insurance Company (Champion). Casualty sought reimbursement against Dukarie and her insurer for property damage payments and medical benefits paid to Ms. Stevens arising from the Stevens-Dukarie automobile accident. Casualty alleged in its petition that upon receipt of the payments to Ms. Stevens, Casualty was assigned and legally subrogated to these claims.
After the suit was filed, Champion was declared insolvent. Ms. Dukarie filed a third party demand against Louisiana Insurance Guaranty Association (LIGA) to stand in the shoes of her insolvent insurer and prayed for reimbursement of any monies that she may have to pay to Casualty. Subsequently, Ms. Dukarie filed peremptory exceptions raising the objections of no right of action and no cause of action.
The trial court sustained the exception of no cause of action and dismissed, with prejudice, the claim of Casualty. The trial court reasoned that the amendment to LSA-R.S. 22:1379(3) by Act 105 of the 1990 Regular Session of the Legislature, which specifically prohibited a subrogated claim against the insured of an insolvent insurance company, was interpretive and meant only to clarify the meaning of the statute. Thus, the amendment could be applied retroactively and the insured was protected.

LEGAL PRECEPTS
The law governing the guaranty association can be found in the insurance code, Title 22 of the Louisiana Revised Statutes. The purpose of the guaranty law, found in LSA-R.S. 22:1376, is as follows:
§ 1376. Purpose
The purpose of this Part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.
*836 LSA-R.S. 22:1378 provides that the statutes "shall be liberally construed to effect the purpose under section R.S. 22:1376, which shall constitute an aid and guide to interpretation."
LSA-R.S. 22:1379(3), at the time the suit was filed, defined covered claims to be paid by LIGA and excluded from that definition "any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." The 1990 amendment, designated as 1379(3)(b), added that "the insured of an insolvent insurer shall likewise not be liable" for such a claim "to the extent of the applicable liability limits previously provided to such insured by the insolvent insurer." On behalf of the bill proposed by Representative John Ensminger, chair of the House Commerce Committee, Mr. Ben Day, reported to the Senate Commerce Committee, at their June 13, 1990 meeting, that the proposed amendment to LSA-R.S. 22:1379(3) would simply clarify the issue of whether insurance companies with subrogated claims, who could not go after LIGA directly for the claims, could sue the insureds of the insolvent carriers.
Casualty asserts that a subrogated claim against the insured was not prohibited by statute before the 1990 amendment. Because the 1990 change created new rights and protection, Casualty argues that the amendment cannot be applied retroactively. Although the suit against the insured, followed by a suit for reimbursement by the insured against LIGA, would achieve the same result as a direct suit by the subrogated insurer against LIGA, Casualty argues that the loophole in the law should be allowed to exist. Casualty alleges that even though a direct suit against LIGA is not permitted and the loophole circumvents the legislative goal and achieves the prohibited result, the law did not specifically prohibit the first step, a suit against the insured. However, the case cited by Casualty to support this argument, Ursin v. Insurance Guaranty Association, 412 So.2d 1285 (La.1982), is not on point and not controlling. The opinion given in Ursin on the issue before us is dicta and we decline to follow that reasoning.
We find the reasoning in Fireman's Fund Insurance Company of Wisconsin v. Pitco Frialator Company, Inc., 145 Wis.2d 526, 427 N.W.2d 417 (Wis.Ct.App.), writ denied, 146 Wis.2d 875, 430 N.W.2d 918 (Wis.1988), a case cited by defendant-appellee, more persuasive. The statutes in Pitco and the case relied on and cited by Pitco, Sandson's Bakery v. Beulah Glover, 162 N.J.Super. 225, 392 A.2d 640 (1978), are similar to the purpose and definitional statutes in Louisiana. Both cases found that the goal of the legislature was to provide protection to not only innocent injured third parties, but also to the insureds of the insolvent companies. The Pitco court agreed with the holding in Sandson's Bakery and reasoned that "[t]o require the insured to satisfy a judgment from its own assets undermines the basic purpose of the statute, and circumvents the clear command of the legislature. The overriding purpose in creating the statute was to protect just such a party as ... the insured of an insolvent." Pitco, 427 N.W.2d at 420.
To allow recovery by Casualty from Ms. Dukarie would create a legal loophole and circumvent the clear intention of the legislature to (1) protect claimants and policyholders of the insolvent companies, and (2) prohibit subrogated claims against LIGA. The result of the two step legal loophole would be the same result achieved by a direct suit against LIGA by the subrogated issuer; a recovery specifically prohibited by law before and after the amendment.
After reading LSA-R.S. 22:1376, 1378, and 1379 together, we find that the clear intention of the legislature, even before the clarifying 1990 amendment, was to protect a good faith policyholder, who paid premiums and sought coverage, from losses created by an insolvent carrier, including a suit by a subrogated insurer, insurance pool, or underwriting association. In fact, the absorption of these losses by the industry, rather than the individual policyholder, furthers the goal of the guaranty fund. It should also foster another legislative purpose by encouraging the industry to police itself better and to assist in the prevention *837 of continued insurance insolvencies. The LIGA fund was not created as a windfall for policyholders, but neither was it created to benefit insurance companies.
Logically, the protection extends only to the applicable limits extended to the policyholder by the insolvent carrier. However, no claim is made in the present case by either side that the amount prayed for exceeds the limits of Ms. Dukarie's policy.
For these reasons, we affirm the judgment of the trial court dismissing the suit by Casualty. All costs of this appeal are assessed to plaintiff-appellant, Casualty Reciprocal Exchange.
AFFIRMED.