IN the MATTER OF the ANCILLARY LIQUIDATION OF INTEGRITY INSURANCE COMPANY, a corporation organized and existing under the laws of the State of New Jersey and licensed to do business in the State of Wisconsin

Before the Wisconsin Insurance Security Fund:

Appeal of Denial of Claim of A.O. Smith Corp.

A.O. SMITH CORPORATION, Petitioner-Appellant,

v.

WISCONSIN INSURANCE SECURITY FUND, Respondent-Respondent.

Court of Appeals

*No. 97–1517. Submitted on briefs December 16, 1997.—Decided February 26, 1998.*

(Also reported in 580 N.W.2d 348.)

254

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Thomas Armstrong* and *Colleen A. Scherkenbach* of *Quarles & Brady* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Jeffrey J. Kassel, Jonathan C. Aked,* and *Christopher J. Wilcox* of *La Follette & Sinykin* of Madison.

Before Eich, C.J., Roggensack and Deininger, JJ.

DEININGER, J. A.O. Smith Corporation appeals two circuit court orders affirming the denial of four claims it filed with the Wisconsin Insurance Security Fund (WISF). A.O. Smith argues that the circuit court erred in concluding that the "net worth statute," § 646.31(12), STATS., bars the claims. Specifically, A.O. Smith contends that on the effective date of the net worth statute, it had vested statutory and contractual rights to collect from the WISF, and the retroactive application of the statute to its claims violates both the Due Process and the Contract Clauses of the United States and Wisconsin Constitutions. Because A.O. Smith did not file the four specific claims until after the effective date of § 646.31(12), we conclude that the statute was not applied retroactively. Moreover, we conclude that A.O. Smith had acquired no vested statutory or contractual rights to recover on its claims from the WISF, and hence the corporation suffered no constitutional deprivations on account of the application of the net worth statute to its claims. Accordingly, we affirm the trial court's orders.

## BACKGROUND

When an insurer is declared insolvent under Chapter 645, STATS., the WISF "[s]tand[s] in the position of the insurer in the investigation, compromise, settlement, denial and payment" of certain claims arising under policies issued by the insolvent insurer. Section 646.13(1)(b), STATS. Payment of claims by the WISF, however, is subject to various eligibility conditions and limitations, one of which is the "net worth statute," § 646.31(12), STATS.:

> (12) NET WORTH OF INSURED. Except for claims under s. 646.35, payment of a first-party claim under this chapter to an insured whose net worth, as defined in s. 646.325(1), exceeds $10,000,000 is limited to the amount by which the aggregate of the insured's claims that satisfy subs. (1) to (7), (9) and (9m) plus the amount, if any, recovered from the insured under s. 646.325 exceeds 10% of the insured's net worth.

The statute essentially creates a deductible for claims against the WISF by insureds whose net worth exceeds $10 million. The legislation which enacted the net worth limitation specified that it first applies "to liquidation claims for which information is filed on the effective date of this subsection [April 28, 1988] that at a minimum specifically identifies the insured event on which the claim is based." 1987 Wis. Act 325, § 23(3).

A.O. Smith had been insured at various times under five separate liability insurance policies issued by Integrity Insurance Company. The claims at issue in this appeal stem from four third-party lawsuits brought against A.O. Smith alleging that the company was liable for events which occurred during the time it was insured under the Integrity policies. On March 24,

1987, before any of the four lawsuits had been filed, a state court in New Jersey issued an order for the liquidation of Integrity. Ancillary liquidation proceedings were filed in Dane County Circuit Court on May 1, 1987. The liquidator of the Integrity estate in New Jersey set a bar date of March 25, 1988, for the submission of all claims. On March 24, 1988, A.O. Smith filed five generic, omnibus proofs of claim, one for each of the policies it had had with Integrity.

Subsequently, in June 1993, A.O. Smith filed supplementary claims which identified the four third-party actions which had been filed against it. Each of these actions was commenced after March 25, 1988, the liquidation bar date, and after April 28, 1988, the effective date of the net worth statute. A.O. Smith stipulated that it had no notice of any of the four specific claims until some time after April 28, 1988. The WISF claims manager denied liability for the four supplementary claims filed by A.O. Smith. The claims manager based the denial on his determination that A.O. Smith's claims were filed after the effective date of the net worth statute, and that the four claims against the fund totaled approximately $1.5 million, which is less than ten percent of A.O. Smith's net worth of $290 million.

A.O. Smith appealed the denial of its claims to the WISF Board. *See* § 646.32, STATS.[1] A.O. Smith argued that it had acquired a vested statutory and contractual right to recover its claims from the WISF prior to the effective date of the net worth statute. The Board appointed a hearing examiner, who, after reviewing the facts stipulated by the parties, determined that the

---

[1] Section 646.32, STATS., permits a disappointed claimant to appeal an adverse determination to the WISF Board, and to have the Board's decision judicially reviewed.

four claims by A.O. Smith against the WISF "arose after the April 28, 1988, effective date of Section 646.31(12), Stats." The examiner concluded that "[p]ayment of A.O. Smith's claims against the Wisconsin Insurance Security Fund is precluded by Section 646.31(12), Wisconsin Statutes." The Board subsequently adopted and affirmed the examiner's determinations over A.O. Smith's objection.

A.O. Smith then petitioned the Dane County Circuit Court for review of the WISF Board's decision denying its claims. The circuit court affirmed the Board's decision, concluding that the net worth statute had not been applied retroactively because on April 28, 1988, the effective date of the statute, A.O. Smith had no enforceable claim against either Integrity or the WISF. The court reasoned that the legislature was free to "prospectively" absolve the WISF of claims from A.O. Smith which arose and were filed after that date. A.O. Smith appeals the circuit court's orders.

## ANALYSIS

*(a)   Standard of Review*

■

Whether A.O. Smith's claims were properly denied under the net worth statute involves an interpretation of the provisions of Chapter 646. The interpretation and application of a statute is a question of law which we review de novo. *State ex rel. Sielen v. Circuit Court,* 176 Wis. 2d 101, 106, 499 N.W.2d 657, 659 (1993). A.O. Smith alleges that the application of the net worth statute on the present facts constitutes a violation of constitutional protections, a claim which we also review de novo. *State v. Woods,* 117 Wis. 2d 701, 715–16, 345 N.W.2d 457, 465 (1984).

*(b)   Whether § 646.31(12), STATS., Was Applied Retro-*
*actively to A.O. Smith's Claims*

A.O. Smith claims that since the Integrity liability
policies insured against "accidents and occurrences,"
the "insured events" were not the third-party lawsuits
commenced against A.O. Smith, as the circuit court
concluded, but were instead the four accidents or losses
which had occurred years before both the liquidation
claims bar date and the effective date of the net worth
statute. A.O. Smith contends that "the liability of the
insurer is deemed fixed, and the insured's right to per-
formance from the insurer is deemed vested, at the
time the accident occurs." *See generally* 11 COUCH ON
INSURANCE 2d, § 44:256 at 399–401 (Rev. ed. 1982).
Thus, A.O. Smith argues, the WISF applied the net
worth statute retroactively to bar its four claims,
thereby depriving the corporation of certain vested
statutory and contractual rights.

▮

After examining the language of the insurance pol-
icies, the circuit court determined that no event had
occurred which triggered the insurer's duty to defend
before the claims bar date of March 25, 1988, or the
later effective date of the net worth statute. The court
concluded that A.O. Smith's claims against Integrity,
and thus against the WISF, did not arise until it was
sued on the underlying claims in 1993. We agree. In
Wisconsin, an insurer generally has no obligation to its
insured to defend against a third-party claim under a
liability policy until a suit has been initiated. *City of
Edgerton v. General Cas. Co.,* 184 Wis. 2d 750, 765, 517
N.W.2d 463, 470–71 (1994). As of April 28, 1988,
neither Integrity nor the WISF had incurred a duty to
defend, or to indemnify, A.O. Smith for claims which

neither the insurer nor A.O. Smith had notice or knowledge.

Even if we were to accept A.O. Smith's contention that Integrity's duties with respect to the claims relate back to the dates of the underlying occurrences, we would still conclude that § 646.31(12), STATS., did not operate to retroactively deny A.O. Smith a contractual right. Nothing in § 646.31(12) affects A.O. Smith's claims against Integrity under the insurance contract. Thus, it would appear that A.O. Smith is entitled to pursue any contractual claims it may have against Integrity in the liquidation proceedings. However, as we discuss below, under Chapter 646, STATS., the WISF assumes only those contractual obligations of Integrity which the statutes direct it to assume. *See* § 646.31(1) ("A claim is not eligible for payment from the fund unless . . . all of the following conditions are met . . . .").

A.O. Smith also argues that § 646.31(12), STATS., does not apply to the claims at issue because it had filed generic, omnibus proofs of claim with the New Jersey liquidator prior to the effective date of the statute. According to A.O. Smith, the New Jersey liquidator's decision to accept the subsequent supplementary filings as part of its original claim is binding on the WISF. We agree that the liquidator's acceptance of the supplementary claims appears to trigger the WISF's statutory obligations,[2] but only if the four claims are otherwise eligible for payment by the WISF. As of April 28, 1988, the effective date of the net worth statute, no information had been filed with the New Jersey liqui-

---

[2] Section 646.13(1)(b)1, STATS., provides, generally, that WISF has no obligation with respect to claims filed after the bar date "unless the liquidator determines that the claim is timely filed and participates in the same distribution as timely filed claims."

dator which specifically identified the claims that were later filed on June 16, 1993. Thus, because "information . . . that at a minimum specifically identifies the insured event on which the claim is based" was not filed until after the effective date of the statute, each claim is subject to the net worth limitation and is thus barred from payment by the WISF. 1987 Wis. Act 325, § 23(3).

Our conclusion is supported by the decisions of courts in other jurisdictions that have concluded guaranty fund obligations are not preserved by the filing of blanket or general claims with a liquidator. The Rhode Island Supreme Court recently held that a blanket claim does not circumvent the claims bar date under that state's guaranty fund law, stating:

> [T]he filing of such contingent or blanket claims prior to the statutory deadline of the guaranty fund does not toll the cutoff date or allow a guaranty fund to provide coverage for a more specific claim presented to the guaranty fund after the filing deadline.

*Kent County Mental Health Ctr. v. Cavanaugh,* 659 A.2d 120, 122 (R.I. 1995); *and see Union Gesellschaft Fur Metal Indus. Co. v. Illinois Ins. Guar. Fund,* 546 N.E.2d 1076 (Ill. App. Ct. 1989); *Monical Mach. Co. v. Michigan Property & Cas. Guar. Ass'n,* 473 N.W.2d 808 (Mich. Ct. App. 1991). Chapter 646, STATS., apparently unlike provisions in Rhode Island, Illinois, and Michigan, does not bar all specific claims filed after the bar date established by the liquidator. Section 646.31(12), STATS, is more narrow in that it only bars claims by large commercial insureds if specific claims were not filed by the statute's effective date. The reasoning of the cited decisions, however, is persuasive in our analy-

sis of whether A.O. Smith's pre-effective date filing of generic claims allows it to avoid § 646.31(12), and we conclude it does not.

Information specifically identifying the insured events at issue was not filed until some five years after the effective date of § 646.31(12), STATS. As of the effective date of the net worth statute, no lawsuits had been filed against A.O. Smith, and the corporation had no notice or knowledge of the four liability actions that were subsequently brought against it. The net worth statute was thus not applied retroactively to the four claims. Rather, the statute was properly applied, prospectively, to claims which arose and were filed after its effective date.

*(c)   Whether the Application of § 646.31(12), STATS., to the Four Claims Impairs Any Vested Statutory or Contractual Rights of A.O. Smith.*

Even if we were to conclude that the effective date provisions set forth in 1987 Wis. Act 325, § 23(3), affected A.O. Smith's claims "retroactively," it would not necessarily follow that a constitutional violation has occurred. In Wisconsin, the general rule is that statutes should be construed as relating only to future acts unless an express statement of intent is given to the contrary. *State v. Elliott,* 203 Wis. 2d 95, 103, 551 N.W.2d 850, 853 (Ct. App. 1996). An exception to this general rule, however, permits the retroactive application of a statute if it is procedural or remedial and does not disturb contracts or vested rights. *Id.*

The WISF was created "to protect insureds from losses occasioned by the insolvency of their insurance company." *Fireman's Fund Ins. Co. v. Pitco Frialator,*

145 Wis. 2d 526, 532, 427 N.W.2d 417, 420 (Ct. App. 1988); § 646.01(2)(a), STATS. This court has concluded that the WISF law is remedial, as are the many similar guaranty association laws of other states:

> [T]he clear and unambiguous purpose of ch. 646 is to protect insureds from losses occasioned by the insolvency of their insurance company. . . .[T]he Wisconsin Insurance Security Fund Law is a *remedial statute* which must be construed to give effect to its leading idea and must be brought into harmony with its purpose.

*Id.* at 532, 427 N.W.2d at 420 (emphasis added).

Due to the remedial nature of insurance insolvency laws, creditors "do not acquire vested rights to particular modes of distribution [in the insolvency] that are beyond the power of [the legislature] to alter." *Maryland Ins. Guar. Ass'n v. Muhl,* 504 A.2d 637, 644 (Md. Ct. Spec. App. 1986). In *Muhl,* the Maryland court upheld the retroactive application of a statutory amendment which made the Maryland counterpart of WISF a priority claimant in an insurance liquidation, despite the fact that the retroactive modification of claim priorities benefited the guaranty association to the detriment of unsecured creditors. *See also Central Bank v. Harris,* 623 S.W.2d 807, 810 (Tex. Ct. App. 1981) ("[R]ights of action based upon purely statutory grounds may be abolished by the legislature even after those rights have accrued."); *and Reinsurance Ass'n v. Dunbar Kapple, Inc.,* 443 N.W.2d 242, 247–48 (Minn. Ct. App. 1989) (holding that no vested right was impaired when the Minnesota Insurance Guaranty Association Act was amended to eliminate a subrogee insurer's previous statutory right to bring a claim for

indemnity and contribution against the insured of an insolvent insurer).

A.O. Smith argues that the cases cited are inapposite because the rights at issue in those cases were not fully fixed and vested, unlike A.O. Smith's rights under §§ 645.42(2) and 646.13(1)(b), STATS., with respect to these four claims.[3] In A.O. Smith's view, its rights, as well as those of Integrity and the WISF, became "fixed" on the date of the liquidation order, March 24, 1987, and thus no statutory change thereafter could deprive it of the right to be compensated from the WISF on its claims against Integrity. We disagree.

First, we note that the Maryland statutes discussed in *Muhl* closely parallel the Wisconsin provisions on which A.O. Smith rests this argument: " 'The rights and liabilities of the insurer and of its creditors [and] policyholders . . . shall, unless otherwise directed by the court, be fixed as of the date on which the order directing the liquidation of the insurer is filed . . . .,' " *Muhl*, 504 A.2d at 639 (quoted source omitted); and, the Maryland insurance guarantee fund "stands in the shoes of the insolvent insurer." *Id.* at 638. Moreover, for A.O. Smith to prevail in its assertions, it must clearly show that the legislature intended to bind itself contractually to the provisions in effect prior to April 28, 1988, thus overcoming the general presumption that the legislature does not intend laws to " 'create

---

[3] Section 645.42(2), STATS., provides that "[u]pon issuance of the [liquidation] order, the rights and liabilities of any such insurer and of its creditors, policyholders, shareholders, members and all other persons interested in its estate are fixed as of the date of filing of the petition for liquidation." Section 646.13 (1)(b), STATS., in turn provides that the WISF shall "[s]tand in the position of the insurer in the investigation, compromise, settlement, denial and payment of claims."

private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 465–66 (1985) (quoted source omitted). We conclude that A.O. Smith has not overcome the "general presumption" in this case: it has not shown that the legislature intended the provisions of Chapter 646 to create any vested statutory or contractual rights in favor of claimants.

The Minnesota Supreme Court has recently concluded that statutory language requiring a guaranty association to assume the contractual obligations of an insolvent insurer did not make the guaranty association a party to the insurance contract:

> To the extent an annuity contract owner enjoys any rights against the Association, it is because they are set forth in a statute. The Association's statutory obligations are not coextensive with the contractual obligations of a failed insurer.

*Honeywell, Inc. v. Minnesota Life and Health Ins. Guar. Ass'n,* 518 N.W.2d 557, 563 (Minn. 1994) (footnote omitted). The issue had been certified to the Minnesota Supreme Court by a federal district court which, based on the Minnesota court's decision, declared that the retroactive application of a statutory amendment to Honeywell did not violate the Due Process or the Contract Clauses of the U.S. Constitution because Honeywell's rights were purely statutory. In an en banc decision, the U.S. Court of Appeals for the Eighth Circuit affirmed. *Honeywell, Inc. v. Minnesota Life and Health Ins. Guar. Ass'n,* 110 F.3d 547, 552–53

(8th Cir. 1997) (en banc), *cert. denied*, — U.S. —, 118 S. Ct. 156, *and reh'g denied*, 118 S. Ct. 592 (1997).[4]

A.O. Smith relies heavily on our opinion in *In re All-Star Ins. Corp.*, 112 Wis. 2d 329, 332 N.W.2d 828 (Ct. App. 1983), for its assertion that it acquired vested statutory and contractual rights because the WISF is subject to the same contractual obligations as Integrity was prior to insolvency. *All-Star* dealt with an insurance company liquidation where the WISF was not a party and no provisions of Chapter 646 were at issue. In *All-Star*, the liquidator of an insolvent insurer sued an insurance agency to recover "unpaid premiums and unearned commissions" allegedly due the insurer under an agency agreement. *Id.* at 332, 332 N.W.2d at 830. Before considering the merits of the disputed claims against the agency, we concluded that "the liquidator (Special Deputy Commissioner of Insurance), for all practical purposes, takes the place of the insolvent company." *Id.* at 333, 332 N.W.2d at 830. The WISF, however, is not "the liquidator," and it performs a much different function than a liquidator under Chapter 645. Chapter 646 does not place the WISF in the same position contractually as an insolvent insurer, rather the Wisconsin law, like its Minnesota counterpart,

> [C]reates an insurance guaranty association with attendant statutory obligations to safeguard the

---

[4] We note, however, that two concurring judges along with the five dissenters all concluded that the Minnesota guaranty fund statute provided the insured with a contractual right to recover from the Fund. *See Honeywell, Inc. v. Minnesota Life and Health Ins. Guar. Ass'n,* 110 F.3d 547, 557–62 (8th Cir. 1997) (en banc) (Loken, J. concurring) *cert. denied,* — U.S. —, 118 S. Ct. 156, *and reh'g denied,* 118 S. Ct. 592 (1997).

financial well-being of [Wisconsin] residents to whom contractual obligations are owed by its member insurance companies. [The chapter] does not create a contract; instead, it creates a statutory safety net to protect the economic well-being of [Wisconsin] resident policy owners in the event a member insurer becomes insolvent.

*Honeywell, Inc.,* 110 F.3d at 552.

■

We conclude, therefore, as have the courts in other states with insurance guaranty fund laws, that due to the remedial nature of the WISF, no statutory or contractual rights were vested in A.O. Smith on April 28, 1988, that were immune from legislative alteration.

## CONCLUSION

Section 646.31(12), STATS., was not applied retroactively to A.O. Smith's claims, and the application of the net worth statute to A.O. Smith's claims impaired no vested statutory or contractual rights of the corporation. We therefore affirm the circuit court's orders and the WISF's denial of the claims. We do not further discuss A.O. Smith's constitutional arguments, because each is dependent on the validity of its assertions regarding vested rights and the retroactive application of the statute, both of which we have rejected.

*By the Court.*—Orders affirmed.