175 N.J. Super. 589 (1980)
421 A.2d 597
EASTERN SEABOARD PILE DRIVING CORPORATION, A CORPORATION OF THE STATE OF DELAWARE AUTHORIZED TO DO BUSINESS IN NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1980.
Decided October 9, 1980.
*590 Before Judges SEIDMAN, ANTELL and LANE.
Richard R. Spencer, Jr. argued the cause for appellant (Stryker, Tams & Dill, attorneys; Stephen D. Cuyler, on the brief).
Steven L. Strelitz argued the cause for respondent (Nolan, Lynes, Bell & Moore, attorneys; Jerome M. Lynes, of counsel).
The opinion of the court was delivered by ANTELL, J.A.D.
Plaintiff's steel dredging barge, the Beverly M, was damaged while being used in the Atlantic Ocean off Long Island, New York, and claims arising therefrom were asserted against a number of insurance carriers covering the risk. One of these, Interstate Insurance Co., was insolvent. Accordingly, Interstate's portion of plaintiff's claim was asserted by plaintiff *591 against defendant, an entity created under the New Jersey Property-Liability Insurance Guaranty Association Act, N.J.S.A. 17:30A-1 et seq., to guaranty payment of covered claims under policies of insurance where the insurer becomes insolvent. The question raised by this suit for declaratory judgment is whether plaintiff presents a "covered claim" within the meaning of the act. The dispute focuses particularly upon whether the following conditions of eligibility posited by N.J.S.A. 17:30A-5 d have been met:
(1) The claimant or insured is a resident of this State at the time of the insured event; or (2) the property from which the claim arises is permanently located in this State.
Defendant appeals from an order dated March 15, 1979 in the Law Division denying its motion for summary judgment and expressly determining that the barge was permanently located within the State of New Jersey for purposes of the act, consistent with its formal opinion published at 167 N.J. Super. 324. Plaintiff cross-appeals from a separate order dated January 23, 1979 denying its motion for summary judgment and granting defendant's motion for partial summary judgment upon the express determination that plaintiff is not a resident of the State of New Jersey for purposes of the act. The court's written opinion in connection therewith appears at 165 N.J. Super. 358. We deal first with plaintiff's cross-appeal.
In reaching its conclusion that plaintiff, a Delaware corporation duly registered to transact business in New Jersey, was not a "resident of this State" within the intent of the statute, the Law Division determined that the statutory language contemplated only domestic corporations of this State. It considered itself bound to this proposition by State v. Garford Trucking, Inc., 4 N.J. 346 (1950), and Red Star Express Lines v. DeStefano, 104 N.J. Super. 102 (App.Div. 1968). We disagree that either of these decisions require the result reached.
In Garford Trucking defendant, a New Jersey corporation, was charged with operating an unregistered motor vehicle in this State in violation of N.J.S.A. 39:3-4. The defendant maintained that because it was licensed to do business in a number of *592 other states along the eastern seaboard, actively transacted business there and had actually registered its vehicle in one of those states, it was a "nonresident," and therefore exempt under N.J.S.A. 39:3-15 from New Jersey's registration requirement. The decision holds only that a domestic corporation cannot become a "nonresident" of the state of its creation for the reason that it may not shed "the residence which is inseparable from domicile." Id. 4 N.J. at 351. Nowhere does it suggest that a corporation may not become a resident of a jurisdiction other than that of its origin. Its explanatory comments are clearly to the contrary:
Unlike a natural person, a corporate entity cannot change its domicile at will, although it may have a situs or residence elsewhere for the transaction of its business. [at 352-353]
Ordinarily, domicile includes residence; but one may have several residences or places of abode or business. [at 353]
... a domestic corporation, whose domicile and residence in this State are inseparable incidents of the charter which gives it being, does not become a "nonresident" by transacting business in another sovereignty, even though it may also have a residence there for certain purposes. [at 353]
Citing the foregoing opinion as authority, its author again stated in In re Roche, 16 N.J. 579 (1954), that although a domestic corporation does not become a nonresident of its domiciliary state by transacting business in another sovereignty, "It may have a residence there for the purposes ordained by the foreign jurisdiction." Id. at 586.
Whether a corporation has established a residence in a foreign jurisdiction depends upon the aim and context of the statute in which the residency requirement is contained and the extent and character of its business there transacted. 17 Fletcher, Encyclopedia of Private Corporations, § 8300 at 10 (1977); 36 Am.Jur.2d, Foreign Corporations, § 37 at 52. It is in this light that Red Star Express Lines v. DeStefano, supra, must be examined.
In Red Star plaintiff was a New York corporation authorized to transact business in New Jersey. It sought payment from the Unsatisfied Claim and Judgment Fund for damage to one of its trucks caused in the State of New Jersey. The question *593 presented was whether plaintiff was "a resident of this State" for payment eligibility purposes under N.J.S.A. 39:6-62. Vital to the court's conclusion that plaintiff was not a resident was the fact that the truck was registered in New York, not in New Jersey, and therefore was not the subject of contributions to the Fund from which plaintiff was seeking payment. The judgment there reached was in clear response to a statutory policy which, in the court's view, contemplated that benefits would be payable from the Fund only to those who in some way had contributed to its maintenance. "The very fact that the foreign corporation, by not registering such vehicles here, has thereby alleviated its burden of contributing to the Fund ..." was cited to support the view that the Legislature did not intend to allow benefits "to foreign corporations whose vehicles are registered elsewhere." Id. 104 N.J. Super. at 108. It additionally noted that there was no contribution to the Fund "out of insurance premiums paid on New York-registered vehicles." It also observed that plaintiff itself evidently did not consider that it was a New Jersey resident since its failure to register the truck in New Jersey infringed N.J.S.A. 39:3-4 which required this of "every resident of this State ..." and questioned, finally, whether all its vehicles should not "have been registered in this State in order to receive the benefit of the Fund statute?"
Nothing in the act before us conditions eligibility for benefits, as Red Star held of the Unsatisfied Claim and Judgment Fund Act, upon contributions, direct or indirect, to the fund maintained by defendant for the payment of covered claims. It requires only that the insolvent insurer be licensed to transact insurance business in this State when the policy was issued or when the insured event occurred. N.J.S.A. 17:30A-5 e. It does not require that the policy be written in New Jersey. Presumably, Interstate Insurance Co. was licensed here, although the policy in question was issued in New York. While it is true that defendant's member insurers may be permitted to recoup their assessed contributions to defendant by surcharges on policy premiums paid in this State, N.J.S.A. 17:30A-16, plaintiff would not necessarily be exposed to such a surcharge *594 even if it were a domestic corporation. As happened here, it could still get its insurance policies elsewhere, depending, of course, upon the nature and location of the property to be insured. This is in contradistinction to the Unsatisfied Claim and Judgment Fund which is in part supported by assessed contributions from insurers out of premiums paid on policies which cover vehicles registered here and can only be issued in this State to satisfy the requirements of the Motor Vehicle Security Responsibility Law, N.J.S.A. 39:6-25(c), 46, 62, 63.
Defendant offers as "a general rule of statutory construction" that statutes which grant privileges, powers, rights or immunities to "residents" will be limited to domestic corporations, absent qualifying words which plainly indicate the contrary. This is probably inadvertent. The rule is correctly stated at 17 Fletcher, Encyclopedia of Private Corporations, § 8301 at 30 (1977), in the following words:
As a general rule, statutes granting powers, privileges or immunities to "corporations," without any qualifying words will be construed as applicable only to domestic corporations in the absence of plain indications to the contrary, or unless the legislative intent of the statute shall extend to foreign corporations is clearly expressed in the terms of the statute.
Here, the Legislature pointedly refrained from the use of any term which would limit benefits under the act to domestic corporations. It used the broader term "resident," which clearly does not require the exclusion of all but domestic corporations. Had it wished, the Legislature could readily have done this by limiting the class to "domestic corporations" or "corporations."
Although plaintiff was incorporated under the laws of the State of Delaware, it has been licensed to transact business in New Jersey since July 20, 1972. It maintains an executive office in Richfield, New Jersey, and operates its principal place of business at the Todd Shipyards in Hoboken. Furthermore, it has allocated 100% of its corporate assets to the State of New Jersey for tax purposes, conducts substantially all of its business in New Jersey and has never maintained a place of business in Delaware. On these facts we conclude that it is a resident within the meaning of the act and entitled to the benefits thereof.
*595 In view of our disposition hereof we find it unnecessary to reach the issues raised by defendant's appeal from the order of March 15, 1979, which determined that the Beverly M was permanently located in New Jersey for purposes of the act. By so doing we imply no expression as to the merits of that controversy or the views contained in the opinion of the Law Division.
Order of January 23, 1979 reversed and order for judgment in favor of plaintiff entered, declaring that plaintiff is a resident of this State within the meaning of N.J.S.A. 17:30A-5 d, and that its claim for damages is a covered one as defined in that section of the statute.