**KROBLIN REFRIGERATED XPRESS, INC. d/b/a Kroblin Transportation Systems, Appellant,**

v.

**IOWA INSURANCE GUARANTY ASSOCIATION, Appellee.**

No. 89–1261.

Supreme Court of Iowa.

Sept. 19, 1990.

Nick Critelli and Connie L. Diekema of Nick Critelli Associates, P.C., Des Moines, for appellant.

Brian L. Campbell of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

SCHULTZ, Justice.

In this declaratory judgment action, plaintiff Kroblin Refrigerated Xpress, Inc. (Kroblin) seeks benefits from the Iowa Insurance Guaranty Association (association). This association was created under Iowa Code chapter 515B (1985).[1] This chapter generally provides that the association is obligated to pay covered claims of insureds or claimants that sustain losses caused by an insolvent insurance carrier. The definition of "covered claim" requires that either the property from which the claim arises is permanently located in Iowa or the "claimant or insured is a resident of this state at the time of the insured event." Iowa Code § 515B.2(3)(a) (1985). The sole and determinative issue is whether Kroblin was a resident of Iowa in 1985 pursuant to this section. The trial court concluded that it was not a resident of Iowa and denied benefits. We affirm.

Kroblin was incorporated in Iowa on November 1, 1950, and maintained its registered corporate offices in Waterloo. It provides interstate transportation of food products. Kroblin experienced expansive growth and now operates in forty-eight states, owning real estate, terminals, and offices in several states. In January 1985 Kroblin moved its corporate offices from Waterloo to Tulsa, Oklahoma without changing its corporate status in Iowa.

In 1985 Kroblin placed its vehicle liability insurance with an Iowa company, Carriers Insurance Company (Carriers). Kroblin placed this insurance directly with the company without utilizing an agent. One of Kroblin's vehicles was involved in a multiple fatality and severe personal injury accident on August 2, 1985, which has resulted in numerous damage claims by victims and their families. In January 1986 the Iowa District Court for Polk County declared Carriers insolvent and ordered liquidation. Faced with this uninsured liability exposure, Kroblin filed for voluntary chapter 11 bankruptcy in Oklahoma and for coverage with the guaranty associations of Iowa, Illinois, and Oklahoma. The Oklahoma association has hired an attorney to represent Kroblin on the damage claims. The Iowa

---

**1.** All references to chapter 515B and its sections refer to the 1985 Iowa Code unless otherwise   indicated.

association denied coverage on the basis that Kroblin had not met the residency requirement.

In deciding the issue of residence, the trial court relied heavily on a 1986 amendment to section 515B.2(3)(a). This amendment defined "resident" as follows: "Other than an individual, the residence of the claimant or insured is the state in which its principal place of business is located." 1986 Iowa Acts ch. 1184, § 4. The court concluded that the amendment clarified, rather than changed, the term "resident" and the principal place of business test was appropriate in determining residency in cases occurring prior to the amendment. The court then found that, in 1985, Kroblin's principal place of business was in Oklahoma, thus concluding that it was not a resident of Iowa.

On appeal, Kroblin urges that the 1986 amendment was a change in the law and, accordingly, the principal place of business test cannot be used to define residency. Kroblin also claims that the trial court erred in finding that Kroblin's principal place of business was in Oklahoma at the time of the insured event.

Initially, we wish to make it clear that this case does not include issues of retroactive or prospective application of the amendment. Although the debate in the briefs of the parties refers to substantive changes or remedial changes, the trial court did not hold that the amendment was to be applied retroactively, nor do we understand that defendant makes any claim on this theory. The issue that we address is whether the 1986 amendment represents a change in the meaning of the term "resident" as applied to a corporation or simply provides a more specific definition without changing the meaning of the term.

I. *The term "resident" under chapter 515B.* The term "resident" when applied to a corporation creates interpretational problems. Strictly speaking, residence is a quality of a person rather than a corporation. 18 Am.Jur.2d *Corporations* § 305, at 216 (1985). We previously described this problem: "A corporation has no residency in the sense that a natural person does. It is an artificial being, operating through its officers, directors, and agents." *Iowa Public Serv. Co. v. Iowa State Commerce Comm'n*, 263 N.W.2d 766, 769 (Iowa 1978).

Legislative bodies have not been bound by this legal interpretation, however. A corporation may be considered a resident by statute. 18 Am.Jur.2d *Corporations* § 305, at 216–17. Under statutes referring to corporate residency, a corporation may acquire a corporate residency separate from its legal residence or domicile. The determination of the place of residency is dependent upon the context of the statute in which the term "resident" is used and the purpose and objective of the statute. *Home Savings & Loan Ass'n v. Iowa City Inn, Inc.*, 260 Iowa 1321, 1326, 152 N.W.2d 588, 590 (1967); *Pittsburgh–Des Moines Steel Co. v. Incorporated Town of Clive*, 249 Iowa 1346, 1348, 91 N.W.2d 602, 604 (1958). In *Clive,* we stated that "the word resident, while often used synonymous with and meaning domicile, is an elastic word with varied statutory meanings, dependent upon the context of the statute in which it is used and the purpose and object to be attained." *Clive,* 249 Iowa at 1348, 91 N.W.2d at 603–04.

In the context of venue cases, we have stated that domestic corporations have one residence that is fixed by charter. *Bennett v. Chicago Lumber & Coal*, 201 Iowa 770, 780–81, 208 N.W. 519, 524 (1926); *State v. District Court*, 191 Iowa 244, 247–48, 182 N.W. 211, 213 (1921). Perhaps we departed from the "charter" rule when we stated in dicta: "[T]he prevailing view is that a corporation's 'residency' is where its principal place of business is located." *Iowa Public Serv.,* 263 N.W.2d at 769. Our explanation that foreign corporations doing business in Iowa have a practical residence within Iowa separate from the legal residence or domicile of the corporation also supports a departure from the "charter" rule. *Home Savings,* 260 Iowa at 1326–27, 152 N.W.2d at 591.

These cases teach us that the term "resident" when statutorily applied to a corporation may have different meanings. When the term "resident" is undefined in

the statute, it becomes an ambiguous term requiring statutory construction to determine its legal meaning. Therefore, we may invoke rules of statutory construction to aid us in determining the meaning of the term "resident." *See* Iowa Code § 4.6 (1985).

The trial court and parties on appeal have approached the issue of statutory construction by addressing the effect of the subsequent amendment, though no one doctrine or principle of construction is necessarily determinative. *Metier v. Cooper Transp. Co.,* 378 N.W.2d 907, 912 (Iowa 1985). In this case, we do not believe that the subsequent amendment necessarily provides conclusive information regarding the meaning of the 1985 statute.

Relying upon *In re Estate of Graham v. Fergus,* 295 N.W.2d 414 (Iowa 1980), and *Mallory v. Paradise,* 173 N.W.2d 264 (Iowa 1969), Kroblin asserts a presumption that by amending an act the legislature intends to change it. These cases, however, are not analogous to this situation for two reasons. One, each case construes the amendment rather than the statute as it previously stood. *In re Graham,* 295 N.W.2d at 416–17; *Mallory,* 173 N.W.2d at 265. Two, in each case the amendment responded to and countermanded a previous judicial decision. *In re Graham,* 295 N.W.2d at 417; *Mallory,* 173 N.W.2d at 268.

The issue of whether a subsequent amendment provides meaning to a former statute requires additional considerations. Courts should consider the legislature's purpose in passing new legislation. If the purpose appears to be removal of doubt or clarification of previous acts, then courts should give weight to that purpose. *Barnett v. Durant Community School Dist.,* 249 N.W.2d 626, 629 (Iowa 1977) (citing *Slutts v. Dana,* 138 Iowa 244, 250, 115 N.W. 1115, 1118 (1908)). Important considerations in determining legislative purpose is the time and circumstances of the amendment which may indicate that the legislature merely intended to interpret the original act by clarifying and making a statute more specific. *Id.*

In this case, however, an examination of the time, circumstances, and contents do not provide a conclusive answer. The amendment was one of eight sections of a bill relating to chapter 515B. Neither the briefs of the parties nor our research reveals any legislative history, comments or reports indicating a reason for the amendment. The language of the amendment does not suggest a reason for its enactment. On its face, the amendment simply provides further definition of the term "resident" as applied to nonindividuals. Arguably, further definition of the term "resident" merely clarifies any ambiguity in the previous statute and rebuts any presumption that the prior statute was changed. We emphasize that the intent of a subsequent legislature cannot control our construction of a statute. As we stated previously: "A court is not *bound* by the construction given a statute by a subsequent legislature, and ... the intent of the original enacting legislature is controlling." *American Home Products Corp. v. Iowa State Bd. of Tax Review,* 302 N.W.2d 140, 144 (Iowa 1981) (emphasis in original). In this case, we conclude that the amendment does not render assistance in determining the meaning of the 1985 statute. Consequently, we must turn our examination to other rules of construction.

General principles of construction require consideration of the spirit and words of a statute, and that the manifest intent of the legislature prevail over the literal import of the words used. *Beier Glass Co. v. Brundige,* 329 N.W.2d 280, 283 (Iowa 1983). Thus, we seek a reasonable interpretation of the term "resident" that will satisfy the objectives of the statute. *Id.*

The major purpose of chapter 515B is to avoid financial loss of insureds or claimants caused by the insolvency of an insurer. *Osborne v. Edison,* 211 N.W.2d 696, 696–97 (Iowa 1973). This purpose does not provide an answer to the question of whether a particular person or corporation falls within the definition of an insured. In searching for an answer, we need to exam-

ine the framework of chapter 515B to determine its overall objectives.

The chapter creates an unincorporated association of companies licensed to do business in Iowa. *See* Iowa Code §§ 515B.2(4), 515B.3. The association pays covered claims by assessing each member insurer in the proportion that each member's gross premiums written in Iowa bears to the sum of premiums written for all member insurers. *See* Iowa Code §§ 515B.2(6), 515B.5(1)(a), (c). Consequently, an insurer doing business in this state is responsible to bear any loss in proportion to the business it conducts in Iowa.

■ This statutory plan for collecting assessments provides insight into our search for the meaning of the term "resident" as used in section 515B.2(3)(a), (b) in defining a "covered claim." We believe that the legislature intended a correlation between the payment of claims and the collection of assessments. Assessments are derived from premiums collected in Iowa, presumably on property located in Iowa or from insureds who reside and pay their premiums in Iowa. When the legislature addressed the payment of claims, we believe they used the term "resident" to refer to a place of habitation or, in the case of corporations, where it conducted its business rather than where it was chartered.

Additionally, we can perceive of no valid reason why the legislature would treat corporations differently from individuals. For an individual, residence refers to a place of abode requiring only bodily presence to be an inhabitant of a given place. *Black's Law Dictionary* 1176 (rev. 5th ed. 1979). Residence has no nexus to where the individual was born. Presumably, an individual purchases and pays for insurance premiums from a place of residence. Likewise, a corporation's charter state does not necessarily have any connection with the state where it buys insurance and pays premiums. Decisions to buy insurance and pay premiums logically would originate where corporate business is conducted—the corporation's nerve center.

Furthermore, the legislature would have no reason to treat a residence of a corporation differently from an individual. An individual who has moved from Iowa to Oklahoma would no longer meet the residency condition. A corporation that has moved its main business center from one state to another is comparable to an individual changing residency.

■ We conclude that the term "resident" as applied to a corporation refers to the site of its principal place of business regardless of its charter state or the number of states in which it conducts business. In reaching this conclusion, we are aware that a corporation may have multistate residences for other purposes and conduct business in several states. We recognize that these corporations may purchase insurance in states other than the state of their principal place of business. The language of chapter 515B appears to recognize only one residence for an insured by requiring an insured having a claim against more than one insurance guaranty association to first seek recovery from its state of residence. Iowa Code § 515B.9(2). For the purpose of this chapter, we believe that a corporation has only one residence. We conclude that the legislature intended this residence to be its principal place of business, the site where it is most likely that the corporation secures insurance and pays premiums.

We are aware of only two other cases that have made similar determinations of corporate residency. *Alabama Ins. Guaranty Ass'n v. Colonial Freight Systems, Inc.*, 537 So.2d 475 (Ala.1988); *Eastern Seaboard Pile Driving Corp. v. New Jersey Property–Liability Ins. Guaranty Ass'n*, 175 N.J.Super. 589, 421 A.2d 597 (1980). In *Colonial Freight*, the Alabama court allowed a claim against the Alabama Insurance Guaranty Association by an insured with its corporate charter in Alabama but its headquarters in Tennessee. It concluded that a corporation is a resident or inhabitant of the state under which it was created. *Colonial Freight*, 537 So.2d at 476. The Alabama court announced this rule without discussion and did not address the purpose and intent of the relevant statute. *Id.*

In *Eastern Seaboard,* a New Jersey court held that a corporation chartered in Delaware with its principal place of business in New Jersey was a resident of New Jersey and qualified as a claimant of New Jersey's guaranty association under a statute identical to our statute. *Eastern Seaboard,* 175 N.J.Super. at 594, 421 A.2d at 600. The New Jersey court stated:

> Whether a corporation has established a residence in a foreign jurisdiction depends upon the aim and context of the statute in which the residency requirement is contained and the extent and character of its business there transacted.

*Eastern Seaboard,* ·175 N.J.Super. at 592, 421 A.2d at 599; *accord* 17 Fletcher, *Encyclopedia of Private Corporations* § 8300, at 10 (1977); 36 Am.Jur.2d *Foreign Corporations* § 37, at 52 (1968). In examining the residency eligibility condition of the New Jersey guaranty act which is identical to our act's residency section the court stated:

> Here, the Legislature pointedly refrained from the use of any term which would limit benefits under the act to domestic corporations. It used the broader term "resident," which clearly does not require the exclusion of all but domestic corporations. Had it wished, the Legislature could readily have done this by limit- ·ing the class to "domestic corporations" or "corporations."

*Eastern Seaboard,* 175 N.J.Super. at 594, 421 A.2d at 600.

We believe that the New Jersey court's reasoning is similar to our more recent interpretations in *Home Savings* and *Clive* that the place of "corporate residency" is dependent upon the context, purpose, and objectives of the statute in which the term is used. We do not believe that the decision in *Colonial Freight* which ties residency irrevocably to the charter state, even if the corporation conducts none of its business in the charter state, is in accord with our statutory scheme.

We hold that the trial court did not err in adopting the principal place of business

test to determine residency. We now turn to the second issue.

II. *Sufficiency of the evidence.* The trial court made a finding of fact that in 1985 Kroblin's principal place of business was outside the State of Iowa. The record in this case consists of a stipulation of facts, deposition, and exhibits. The issue is whether or not there is substantial evidence in the record to support the trial court's finding of fact.

We have not previously defined "principal place of business" in the context of defining residency under chapter 515B. In two.cases, we have addressed the question of the principal place of business of a corporation in the context of taxation of the corporation. *J.J. Harris & Co. v. Browner,* 256 Iowa 1243, 130 N.W.2d 711 (1964); *Iowa Limestone v. Cook,* 211 Iowa 534, 233 N.W. 682 (1930). In *Limestone,* we stated that the principal place of business was where the plant was located and the business transacted rather than where the books were kept. *Id.* at 543, 233 N.W. at 687. In *J.J. Harris & Co.,* we held that a corporation conducting all of its business out of state but organized under Iowa law was not subject to taxation· merely because it maintained a statutorily required registered office in Iowa. *Id.* at 1247, 130 N.W.2d at 713. We stated that the principal place of business must be determined by the tax assessor, depending on the nature of the business subject to assessment and where the corporation's business is actually transacted. *Id.* at 1250, 130 N.W.2d at 715. Since Kroblin conducts a substantial amount of business in several other states, these two cases do not provide a definitive answer to our problem.

Federal diversity cases in which a nerve center test, *Mahoney v. Northwestern Bell Tel. Co.,* 258 F.Supp. 500 (D.Neb.1966), *aff'd* 377 F.2d 549 (8th Cir.1967), and a total activity test, *Toms v. Country Quality Meats, Inc.,* 610 F.2d 313, 315 (5th Cir. 1980), were adopted are cited to us. The nerve center test emphasizes the location of the managerial and policymaking functions of the corporation, whereas the place of activity test takes into account the

places where the corporation has the greatest contact with the public, the largest number of employees, the greatest assets, and derives most of its income. *Mahoney*, 258 F.Supp. at 502. The total activity test incorporates both the nerve center and place of activity tests. *Toms*, 610 F.2d at 315.

 We believe that the determination of the corporation's principal place of business must be made within the context of chapter 515B. Factors to consider in determining Kroblin's principal place of business should include the location of the offices responsible for: (1) making decisions on expenditures, such as the purchase of vehicles and other insurable items; (2) controlling offices or terminals in other states; (3) maintaining centralized administrative records; (4) handling insurance matters; and (5) other relevant matters concerning the operation of its fleet of vehicles and the purchase of liability insurance.

Based on consideration of these factors, we believe there was substantial evidence in the record to support the trial court's decision. Kroblin's main office was located in Oklahoma and the Board of Director's decisions have been made in Oklahoma since 1985. The Board makes decisions regarding expenditures, the purchase of vehicles, and also establishes the budget for the regional terminals in other states. The Oklahoma office maintains centralized administrative records, including the payroll, mileage statistic invoices, daily logs and maintenance records, and records for all of the regional offices. The Oklahoma office also contains the central insurance department. There are fifty-eight employees in Oklahoma as compared to fourteen in the Iowa office. The corporation owns real estate in Oklahoma, Iowa, and Connecticut and has major facilities in Oklahoma and Iowa. Even though the corporation did substantial business in the State of Iowa, no single state enjoyed a majority of Kroblin's business. We find substantial evidence supports the trial court's finding of fact.

III. *Summary.* In summary, we conclude that a corporation's residence is its principal place of business under chapter 515B. We find no error in the trial court's finding of fact that Kroblin was a resident of Oklahoma rather than Iowa.

AFFIRMED.