652 So.2d 686 (1995)
TRANS LOUISIANA GAS COMPANY, Trans Louisiana Industrial Gas Company, Inc., Energas Company, Egasco, Inc., Enermart, Inc. and Atmos Energy Corporation,
v.
LOUISIANA INSURANCE GUARANTY ASSOCIATION.
No. CA 93 2287.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
*687 J. Kenton Parsons, Baton Rouge, for plaintiffs-appellants, Trans Louisiana Gas Co., et al.
Christopher R. Philipp, Lafayette, for defendant-appellant, LIGA.
Before SHORTESS, LeBLANC and EDWARDS[*], JJ.
WALLACE A. EDWARDS, Judge.
Plaintiffs, Atmos Energy Corporation, Energas Company, Trans Louisiana Industrial Gas Company, Inc., Egasco, Inc., Enermart, Inc., and Trans Louisiana Gas Company, filed a petition for declaratory judgment to have their rights, status, and legal relations declared under an insurance policy and LSA-R.S. 22:1375, et seq., the statutes governing defendant, Louisiana Insurance Guaranty Association (LIGA). Based on the plaintiffs' insurance policy from their insolvent insurer, American Lloyds, and the LIGA statutes, the trial court found that the parent corporation during the policy period, Energas Company (Energas),[1] a Texas corporation with its principal place of business in Texas, was (1) a resident of Louisiana and an insured entitled to coverage by LIGA, (2) entitled to reimbursement for certain funds paid by plaintiffs in settlement of insurance claims, (3) entitled to pre-insolvency and post-insolvency attorneys' fees, and (4) due reimbursement for funds paid by plaintiffs in settlement of a second covered claim arising from one occurrence in Campbell v. Rheem Manufacturing Company, Trans Louisiana Company, Inc., Energas Company, et al. The trial court recognized the amount "owed by LIGA to" plaintiffs, but did not award damages. However, the trial court awarded legal interest "on the amounts awarded from the date of the signing of [the declaratory] [j]udgment." LIGA and plaintiffs appealed. In answer to the issues appealed, we agree with the trial court's judgment holding LIGA responsible, to its statutory limit, for the second claim in Campbell and for the post-insolvency attorneys fees incurred in Campbell and Toro Hills, Inc. v. A.J. and Nona Trigg Hodges Foundation, et al. However, we find that the trial court erred in its findings that the parent corporation was a resident of Louisiana, that LIGA was obligated to pay any preinsolvency attorneys' fees, that LIGA was obligated to pay post-insolvency attorneys' fees and expenses arising from a subrogation claim, and in awarding legal interest of any kind in a declaratory judgment suit to plaintiffs who did not ask for supplemental relief in the form of damages and to whom no award of damages was made. Therefore, we affirm in part and reverse in part.
American Lloyds, an insurer authorized to transact business in Louisiana, issued a policy of insurance with coverage from October, 1986 to October, 1987 to Energas Company, Egasco, Inc., Enermart, Inc., and Trans Louisiana Industrial Gas Company, Inc. By a policy change order, Trans Louisiana Gas Company was added as an insured because Energas, a natural gas supplier, had purchased Trans Louisiana Gas Company, Inc., a Louisiana corporation. Energas dissolved the Louisiana corporation and managed it as Trans Louisiana Gas Company, an operating division of Energas doing business in Louisiana. The policy coverage for Trans Louisiana Gas Company was listed as June, 1986, to October, 1987.
Energas, a Texas corporation, with its principal place of business in Texas, operated in other states, including Louisiana. According to Louisiana's Secretary of State, Energas had qualified and had been authorized to do business in Louisiana since 1986.
Suits were filed against Energas or its operating company, Trans Louisiana Gas Company, in Louisiana and Texas for damages covered by the American Lloyds policy. American Lloyds provided attorneys to represent Energas in the suits. However, because of a high deductible of $25,000 for each occurrence, Energas negotiated an agreement with American Lloyds that would credit any attorneys' fees paid by Energas in defense of the suits to the deductible, even *688 though American Lloyds continued to provide a defense in some cases.
American Lloyds became insolvent on June 21, 1989. Energas filed a proof of claim with LIGA, received by LIGA in October of 1989, for money due to losses covered by the American Lloyds policy and expenses in the lawsuits listed in the claim. The proof of claim provided the following information:
5. Prior to its Liquidation, American Lloyds was providing defense and coverage to the insureds-policyholders in the following lawsuits:
1. Francis Lewis Hundley, et al vs. Even St. Julien, et al (including TransLa Gas Company, Inc), Suit No. 88-1764, Division "A", 15th Judicial District Court, Parish of Lafayette, State of Louisiana;
2. Michael and Heidi Campbell, et al vs. Rheem Manufacturing Company, Trans Louisiana Company, Inc. and Energas Company, et al, Suit No. 88-3991, Division "C", 15th Judicial District Court, Parish of Lafayette, State of Louisiana;
3. Dawn Michelle Landry, et al vs. Joseph A. Waguespack, et al. (including TransLa Gas Company, Inc.), Suit No. 88-2305, Division "G", 15th Judicial District Court, Parish of Lafayette, State of Louisiana;
4. Manual Dugas, et al vs. Trans Louisiana Gas Co., et al, Suit No. 886,309, Div. "K", 15th Judicial District Court, Parish of Lafayette, State of Louisiana;
5. Betty Jo Mondello vs. Energas Company, et al, Suit No. 57,744, Division "A", 10th Judicial District Court, Natchitoches Parish, Louisiana;
6. Toro Hills, Inc. vs. A.J. and Nona Trigg Hodges Foundation, et al (including Energas Company), Suit No. 40,904 Division "B", 11th Judicial District Court, Sabine Parish, State of Louisiana;
7. International Surplus Lines Insurance Company, Inc. vs. A.J. and Nona Trigg Hodges Foundation, et al (including Energas Company), Civil Action No. 88-0399, United States District Court for the Western District of Louisiana (Alexandria Division);
8. Tracey Harmel, et al vs. Bob Laroche and Energas Company, Suit No. 70,479, Division "E", 108th District Court, Potter County, State of Texas; and
9. John V. Barton, et al vs. Bob Laroche and Energas Company, Suit No. 70,583, Division "A", 47th District Court, Potter County, State of Texas.
Another suit, Kym Daniel v. Jose Antonio Gutierrez and Energas Company, Suit No. 71614, Division E, 108th District Court, Potter County, State of Texas, was later added to the claim.
Energas and LIGA could not come to an agreement on LIGA's obligations under the policy and the governing statutes, LSA-R.S. 22:1375, et seq., which prompted the filing of the petition for declaratory judgment by the current parent corporation, Atmos Energy Corporation, and its subsidiaries and operating companies.
The trial court issued reasons for judgment and subsequently, rendered judgment on June 30, 1993. Plaintiffs appealed and assigned error to the trial court's decision to run legal interest from the date of judgment, rather than an earlier date, such as the date of insolvency or judicial demand. LIGA appealed and assigned error to the findings by the trial court that (1) Energas was a resident of Louisiana and entitled to coverage for losses due from three suits filed in Texas concerning accidents in Texas, (2) LIGA was obligated to pay Energas $134,900 as reimbursement for a second claim in Campbell arising from one accident or occurrence, (3) LIGA was obligated to reimburse Energas for pre-insolvency attorneys' fees and expenses, and (4) LIGA was obligated to reimburse Energas for post-insolvency attorneys' fees and expenses in the International Surplus Lines Insurance Company (ISLIC), Toro Hills, and Campbell suits.

INTEREST
Energas assigned error to the date from which the award of legal interest would *689 run. Energas argues that legal interest should have been awarded from the date of insolvency, the date the loss was ascertainable, or the date of judicial demand, and not from the date of the judgment.
Pursuant to Louisiana Code of Civil Procedure article 1871, courts, in a declaratory judgment, "may declare rights, status, and other legal relations whether or not further relief is or could be claimed." "The conventional type of judgment embodies two elements: (1) an ascertainment or declaration of the rights of the parties ...; and (2) a specific award of relief. The declaratory judgment embodies only the first element...." LSA-C.C.P. art. 1871, comments. When rights are uncertain or disputed in cases involving actual controversy, the court, in a declaratory judgment, can establish or clarify the rights, without ordering anything to be done. Watts v. Aetna Cas. and Sur. Co., 574 So.2d 364, 372 (La.App. 1st Cir.1990); State, Department of Transportation & Development v. Sugarland Ventures, Inc., 476 So.2d 970, 973-74 (La.App. 1st Cir.), writ denied, 478 So.2d 909 (La.1985). Further or supplemental relief may be granted, if demanded, and after notice and hearing. LSA-C.C.P. art. 1878; see Chauvet v. City of Westwego, 599 So.2d 294, 296 (La.1992).
Customarily, the appellate court reviews issues submitted to the trial court and contained in the assignments of error, unless the interest of justice requires otherwise. Uniform Rules-Courts of Appeal, Rule 1-3. If justice requires, the appellate court can "render any judgment which is just, legal, and proper upon the record on appeal." LSA-C.C.P. art. 2164.
Energas prayed for a declaration of its rights and did not seek further relief or demand monetary damages. In its first and second amending petitions, Energas prayed for "applicable legal interest, attorney's fees and costs associated with bringing the Petition for Declaratory Judgment to trial...." The trial court "recognized" the amounts LIGA was obligated to pay, but did not award any monetary damages and did not award plaintiffs attorneys' fees for bringing the petition of declaratory judgment to trial. "Interest is not allowable on that portion of a judgment representing costs." Pillow v. Board of Com'rs, 425 So.2d 1267, 1284 (La. App. 2d Cir.1982), writ granted, 427 So.2d 1200 (La.1983), writ recalled and cert. denied, 445 So.2d 1225 (La.1984).
The declaratory judgment declared the rights of the parties, without doing anything else. We find no merit in the argument of Energas on the issue of interest. Without an award of monetary damages, the question of when interest should run on such an award is premature and not an issue before this court. The portion of the judgment awarding legal interest in the judgment is reversed.

RESIDENCY
LIGA argues that Energas does not qualify as a resident of Louisiana entitled to coverage by LIGA for the suits filed in Texas because Energas is a Texas corporation with its principal place of business in Texas. Energas points to the substantial business that Energas does in Louisiana through it operating division.
A claim covered by LIGA is "an unpaid claim ... which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy ... issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970, and: (i) The claimant or insured is a resident of this state at the time of the insured event; or (ii) The property from which the claim arises is permanently located in this state." LSA-R.S. 22:1379(3)(a). Unfortunately, the LIGA statutes do not define the word "resident."
In those situations in which a corporation's residence is at issue, such as for jurisdictional and venue purposes, statutes of limitations, and exemptions from residency requirements, it is generally agreed that a corporation is a resident of the state of its incorporation. Further, as a general rule, whether a corporation acquires residence for one purpose or another outside of its state of incorporation, it usually remains a resident of its state of incorporation. McMahon v. Louisiana Ins. Guar. Ass'n, 596 So.2d 1384, 1389 (La.App. 1st Cir.), writ denied, 604 So.2d 970 (La.1992), citing Fletcher Cyclopedia of the *690 Law of Private Corporations, v. 8 § 82, p. 154. "For purposes of one important aspect of federal court jurisdiction over the subject matterdiversityofcitizenshipthe residence of natural persons and state or states of incorporation and principal place of business of artificial persons are the tests of citizenship." Harry G. Henn & John R. Alexander, Laws of Corporations, § 83 (3d ed. 1983).
Because the LIGA statutes do not define resident or residency, the definition "must be determined by the context, purpose, and objective of the statute in which the term is used as well as the extent and character of the business the corporation transacts within the state."[2]Pennsylvania Ins. Guar. Ass'n v. Charter Abstract Corp., 790 F.Supp. 82, 85 (E.D.Pa.1992). The legislature could have used the term "domiciliary" or limited covered claims brought by corporate insureds to those brought by domestic corporations, but it chose instead to use the term "resident." See McMahon, 596 So.2d at 1388. We assume by that choice that the legislature conceived of the possibility of a domestic corporation that would not qualify as a resident and a foreign corporation that could qualify as a resident and for coverage by LIGA. A possible legislative limitation on the number of an insured's residencies is presented by LSA-R.S. 22:1386. LSA-R.S. 22:1386(B) provides that "[a]ny person having a claim which may be recovered under more than one insurance guaranty association... shall seek recovery first from the association of the place of residence of the insured ..." and seems to envision only one clear residency per insured.
On this point, we find the following reasoning in Pennsylvania Ins. Guar. Ass'n., 790 F.Supp. at 85-87, interesting:
In Eastern Seaboard Pile Driving Corp. v. New Jersey Property-Liability Ins. Guar. Ass'n, 175 N.J.Super. 589, 421 A.2d 597 (1980), the Superior Court of New Jersey rejected the lower court's decision that the statutory language concerning residence in New Jersey's guaranty act contemplated only domestic corporations, and held that a corporation which was incorporated under the laws of Delaware but maintained its executive offices and principal place of business and conducted substantially all of its business in New Jersey, was a New Jersey resident for the purpose of the statute and could maintain a covered claim.
The Supreme Court of Alabama, on the other hand, in Alabama Ins. Guar. Ass'n v. Colonial Freight Systems, Inc., 537 So.2d 475 (Ala.1988), held that a corporation which was incorporated under the laws of Alabama was a resident for purposes of Alabama's insurance guaranty act, notwithstanding the fact that it maintained its principal place of business in Tennessee.
. . . . .
In Kroblin Refrigerated Xpress, Inc. v. Iowa Ins. Guar. Ass'n, 461 N.W.2d 175 (Iowa 1990), ...., plaintiff corporation, a provider of interstate transportation of food products, was incorporated and originally maintained its corporate offices in Iowa. The company enjoyed substantial growth and eventually operated in fortyeight states and owned offices and real estate in several states. In January, 1985, it moved its corporate offices to Oklahoma without changing its corporate status in Iowa. In August, 1985, one of the company's vehicles was involved in an accident which resulted in multiple fatalities.

*691 When, a few months later, the company's insurance carrier was declared insolvent, the company filed for voluntary chapter 11 bankruptcy in Oklahoma and applied for coverage from the Iowa Insurance Guaranty Association (`Iowa Association'). The Iowa Association denied coverage on the ground that the company did not fulfill the residency requirement.
The Iowa Supreme Court held that under the Iowa insurance guaranty statute, a corporation can have only one residence, which is the site of its principal place of business regardless of its charter state or the number of states in which it conducts business. Id., 461 N.W.2d at 179. In determining that the statute permits only one residence, the court recognized that a corporation may have multistate residences for certain purposes and may purchase insurance in states other than its principal place of business. The court concluded, nevertheless, that the legislature intended that a person or corporation could have only one residence when it included the requirement that an insured having a claim against more than one insurance guaranty association must first seek recovery from the guaranty association of its state of residence. Id.

In reaching its decision that a corporation's residence is the site of its principal place of business, the court reasoned that the legislature intended a correlation between the payment of claims and collection of assessments, which are derived from premiums collected on property located in Iowa or from insureds who pay their premiums in Iowa.
. . . . .
Of the three cases, only Kroblin expressly held that both individuals and corporations can have only one residence for purposes of the statute, regardless of how residence is defined, [i.e.] whether residence is defined by principal place of business or by state of incorporation, that definition provides the sole criterion for determining residence.
Although we noted in McMahon that a person may have more than one residence, the legislature may have meant for insureds to have only one clear residence, or certainly a restricted number, for purposes of the Louisiana guaranty statutes. See McMahon, 596 So.2d at 1388. However, it is not necessary to decide that issue or whether place of incorporation, principal place of business, or an analysis of both should control residency because Energas does not meet any of the tests. Based on the language of LSA-R.S. 22:1386, we believe that the legislature certainly did not mean to include within the definition of resident a foreign corporation, with its principal place of business out of Louisiana, that does business through subsidiaries or operating divisions in other states, merely because it also does substantial business in Louisiana. Such a reading of resident would be too broad. Thus, we find that Energas, a Texas corporation with its principal place of business in Texas, is not a resident of Louisiana and LIGA is not obligated to cover any of the claims arising from the Texas suits.

CAN TWO COVERED CLAIMS ARISE FROM ONE OCCURRENCE?
The American Lloyds policy coverage was triggered by an occurrence, defined as an accident. The policy had limits of $500,000 per occurrence with no specific limit on per person injuries.
The trial court found that the Campbell case, involving two children severely burned in the same occurrence or accident, was controlled by Cooper v. Huddy, 581 So.2d 723 (La.App. 1st Cir.), writ denied, 585 So.2d 552 (La.1991), and that the claims of the two children, arising from one occurrence, constituted two covered claims for which LIGA was responsible to the statutory limit. The trial court calculated the sum that LIGA was obligated to pay to be an additional $134,900.
LIGA assigned error to the trial court's finding that LIGA had an obligation for a second covered claim. LIGA asserts that, even if it is liable, the trial court erred in its calculation of the amount of the obligation.
We agree with the trial court that Cooper is controlling. We find the calculation of the trial court of $134,900 was slightly incorrect. The total settlement in Campbell was $309,900 *692 ($160,000 contributed by TransLa and $149,900 by LIGA). This figure, less the $25,000 per occurrence policy deductible, the deductible under LSA-R.S. 22:1382(A)(1)(a)(iii) of $100 per covered claim, and the $149,900 payment made by LIGA before trial, total $134,800. We thus must amend that portion of the judgment.

PRE-INSOLVENCY ATTORNEYS' FEES AND EXPENSES
LIGA argues that pre-insolvency expenses are prohibited by LSA-R.S. 22:1379(3)(d) and that the trial court erred in awarding pre-insolvency expenses in any of the suits.
LSA-R.S. 22:1379(3)(d) provides:
`Covered claim' shall not include any claim based on or arising from a preinsolvency obligation of an insolvent insurer, including but not limited to contractual attorneys' fees and expenses, statutory penalties and attorneys' fees, court costs, interest and bond premiums, or any other expenses incurred prior to the determination of insolvency.
Energas relies on dicta from a federal court, specifically the following language from Sifers v. General Marine Catering, 892 F.2d 386, 400 n. 63 (5th Cir.1990):
It is, however, possible to contemplate situations in which LIGA would be responsible for pre-insolvency fees because of a contractual obligation to defend between the insured, not the insurer, and the law firm. Recovery of such fees may also arise where the insurer, in bad faith, fails to defend and the insured must retain separate counsel.
Energas argues that the obligation it incurred was of the type envisioned by the court in Sifers and that this court should adopt similar reasoning and find that LIGA is responsible for the pre-insolvency attorneys' fees and expenses.
The pre-insolvency attorneys' fees and expenses claimed by Energas arose from an obligation of American Lloyds to provide a defense. American Lloyds, before the insolvency, did not refuse to defend Energas. The voluntary assumption of attorneys' fees and expenses by Energas, in agreement with American Lloyds, as a way to meet the high deductible does not change the insurer's preinsolvency obligation into an obligation of the insured covered by LIGA. Energas undertook the obligation to pay attorneys of its own choosing, even though in some cases American Lloyds paid other attorneys to represent Energas.
We find the reasoning in Sifers to be inapplicable. American Lloyds offered or provided a defense. Energas made no allegation of fraud, bad faith, or failure to provide a reasonably competent defense. Under the facts of this case, no basis exists for a characterization of the voluntary assumption by Energas of American Lloyds' obligation as an obligation of the insured. The claim for preinsolvency attorneys' fees and expenses voluntarily undertaken by Energas to obtain its own personal representation and meet the high deductible remains a "claim based on or arising from a pre-insolvency obligation of an insolvent insurer...." LSA-R.S. 22:1379(3)(d). Therefore, the trial court erred in finding that LIGA was statutorily obligated to pay any pre-insolvency attorneys' fees or expenses.

POST-INSOLVENCY ATTORNEYS' FEES AND EXPENSES
LIGA assigned specific error to the trial court's finding that LIGA was obligated for post-insolvency fees and expenses in ISLIC and Toro Hills because they involved subrogation claims not covered by LIGA and in ISLIC, Toro Hills, and Campbell because LIGA provided a defense to Energas.
LSA-R.S. 22:1379(3)(b) provides, in part, that a "`[c]overed claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." It is clear from the record that the ISLIC suit was based on a subrogated claim due to an insurer. However, the Toro Hills suit contained independent allegations of injury and claims for damages based on uninsured losses resulting from interruption of business and the lost value in the sale price of the property arising from a fire allegedly caused, in part, by the negligence of Energas. The two suits *693 were not consolidated for trial in any one jurisdiction. A federal court dismissed the suit in ISLIC and the plaintiffs agreed to voluntarily dismiss the suit in Toro Hills in state court.
The record contains little information on the type or amount of defense actually offered by LIGA and LIGA does not specifically argue this assignment of error in brief. Plaintiffs and LIGA could not agree on LIGA's obligations arising from Toro Hills and Campbell and it appears from the record that plaintiffs necessarily incurred attorneys' fees and expenses to protect their interests in the two suits. Whether based on the lack of evidence in the record on the extent of any defense offered by LIGA or the apparent abandonment of the assignment of error pursuant to Uniform Rules-Court of Appeal, Rule 2-12.4, we find no merit in LIGA's argument that Energas is not entitled to post-insolvency fees and expenses incurred in defending the Toro Hills and Campbell cases.[3]
Therefore, we find no error in the trial court's recognition of LIGA's obligation to pay actually incurred post-insolvency fees and expenses in Toro Hills and Campbell. However, the trial court did err in finding LIGA obligated to pay post-insolvency fees and expenses in ISLIC.
For the foregoing reasons, we affirm in part and reverse in part. We reverse the part of the judgment holding that the parent corporation was a Louisiana resident and that LIGA was responsible for any claims arising from the Texas claims or suits, that plaintiffs were entitled to any pre-insolvency fees and expenses, that plaintiffs were entitled to post-insolvency fees and expenses in ISLIC, and the part of the judgment awarding legal interest. We amend the part of the judgment holding that plaintiffs are entitled to an additional $134,900 in Campbell by changing that figure to $134,800. We affirm the part of the judgment awarding postinsolvency fees and expenses in Toro Hills and Campbell, but only the amount of fees and expenses actually incurred in defense of those two suits. Of course, the parts of the judgment not appealed remain valid. The costs of the trial and the appeal, $1376.49, are assessed one-half to plaintiffs and one-half to LIGA.
REVERSED IN PART; AMENDED IN PART, AND AFFIRMED IN PART.
NOTES
[*] Judge Wallace A. Edwards, retired, was reassigned by special appointment of the Supreme Court to hand down this decision.
[1] In 1988, the parent corporation changed its name to Atmos Energy Corporation. Energas Company became an operating division in Texas.
[2] For jurisdictional and venue purposes, LSA-R.S. 13:3206 exempts from nonresident status a foreign corporation authorized to do business in Louisiana. "This exclusion accords with the policy of Louisiana to place such a corporation on the same procedural basis as a domestic corporation." LSA-R.S. 13:3206, comment (b). LSA-R.S. 12:306 provides that foreign corporations with a certificate of authority to transact business in Louisiana shall "[e]njoy the same, but no greater, rights and privileges as a business ... organized under the laws of this state to transact the business which such foreign corporation is authorized to transact in this state...." However, neither the jurisdictional and venue statutes nor LSA-R.S. 12:306 deem a foreign corporation to be a resident of Louisiana for all purposes. The exemption from nonresident status in a specific jurisdictional and venue statute and the prohibition in a corporate statute against treating authorized foreign corporations unequally do not provide a sufficient basis for residency under the LIGA statutes.
[3] The trial court found that LIGA was obligated to pay the post-insolvency fees and expenses in ISLIC and Toro Hills. Energas consistently combined the attorneys' fees and expenses for ISLIC and Toro Hills in testimony or exhibits in the record. However, one of the attorneys hired by Energas to represent them in the two suits, Oscar E. Reed, Jr., testified by deposition that the billing could be divided. He testified that some of the work in Toro Hills was billed separately and that any combined bill could be allocated on a fifty-fifty basis.