PER CURIAM.
Alabama Insurance Guaranty Association (“AIGA”) filed this action to determine the residency of Air Tuskegee, LTD.; the trial court granted Wilford Senn, Joan Senn, David R. Dobbins, and Robin Dobbins’s cross-motion for a summary judgment declaring that Air Tuskegee is a resident of the State of Alabama within the meaning of the Alabama Insurance Guaranty Association Act (Ala.Code 1975, §§ 27-42-1 through 27-42-20) (“the Guaranty Act”). AIGA appeals.
The parties stipulated to the following joint statement of undisputed facts before the trial court granted the Senns and Dob-binses’ cross-motion for a summary judgment:
“1. The AIGA is an involuntary, nonprofit unincorporated legal entity created by legislative act pursuant to §§ 27-42-1 through 27-42-20, Ala.Code [1975].
“2. The purpose of the [Guaranty] Act is to provide a mechanism for the payment of statutorily defined claims made under certain types of insurance policies issued by insurance companies licensed to transact insurance in the State of Alabama that are declared insolvent and against whom an order of liquidation has been entered.
“3. On December 6, 1995, the Troup County (Georgia) Airport Authority was the owner, maintainer and lessor of a Piper PA-28-180 aircraft.
“4. On December 6, 1995, David R. Dobbins rented the Piper aircraft from the Troup County Airport Authority.
“5. On the morning of December 6, 1995, David R. Dobbins departed the Troup County Airport in the Piper aircraft in route to Spartan-burg, South Carolina.
“6. On December 6, 1995, Wilford Senn was a passenger in the Piper aircraft that was piloted by David R. Dobbins.
“7. On December 6, 1995 and while in flight, the engine in the Piper aircraft piloted by David R. Dobbins failed, resulting in a crash landing near Athens, Georgia.
“8. As a result of the December 6, 1995 crash, David R. Dobbins and Wilford Senn sustained severe, permanent injuries to their bodies.
“9. Prior to the December 6, 1995 crash of the Piper aircraft, Air Tuskegee, Ltd., and/or Gerald Waller had been hired by the Troup County Airport Authority to perform maintenance on and/or to examine the engine of the Piper aircraft. The subject maintenance and inspection to the subject Piper aircraft took place in Alabama.
“10. At all times relevant to his performance of maintenance on and/or examination of the engine of the Piper aircraft, Gerald Waller was either an independent con *194 tractor, agent or employee of Air Tuskegee, Ltd.
“11. As a result of the December 6, 1995 crash, on or about December 4, 1996 Wilford Senn, Joan Senn, David R. Dobbins and Robin Dobbins filed a lawsuit in the Superior Court of Troup County, Georgia against Air Tuskegee, Ltd. and Gerald Waller, among others, styled Wilford Senn, et al. v. Troup County Airport Authority, et al., Civil Action No. 97-CV-997, presently pending (hereinafter ‘the Underlying Action’).
“12. In the Underlying Action, David R. Dobbins, Robin Dobbins, Wilford Senn and Joan Senn allege that Air Tuskegee, Ltd. and Gerald Waller negligently, wantonly and/or recklessly performed maintenance on the Piper aircraft that crashed on December 6, 1995 and of which David R. Dobbins piloted and in which Wilford Senn was a passenger.
“13. In the Underlying Action, David R. Dobbins and Wilford Senn seek damages from Air Tuskegee, Ltd. and Gerald Waller, among others, for the permanent injuries each of them sustained in the December 6, 1995 crash.
“14. In the Underlying Action, Robin Dobbins and Joan Senn claim damages for loss of consortium from Air Tuskegee, Ltd. and Gerald Waller, among others, due to the physical injuries sustained by their respective spouses, David R. Dobbins and Wilford Senn, in the December 6,1995 crash.
“15. At the time of the December 6, 1995 crash made the basis of the Underlying Action, Air Tuskegee, Ltd. was a corporation existing under the laws of the State of Delaware having its principal place of business in Tuskegee, [Macon County,] Alabama.
“16. At the time of the December 6, 1995 crash made the basis of the Underlying Action Gerald Waller was a citizen and resident of [Lee County, Alabama].
“17. At the time of the December 6, 1995 crash made the basis of the Underlying Action, Wilford Senn was a resident of a state other than the State of Alabama
“18. At the time of the December 6, 1995 crash made the basis of the Underlying Action, Joan Senn was a resident of a state other than the State of Alabama.
“19. At the time of the December 6, 1995 crash made the basis of the Underlying Action, David R. Dobbins was a resident of a state other than the State of Alabama.
“20. At the time of the December 6, 1995 crash made the basis of the Underlying Action, Robin Dobbins was a resident of a state other than the State of Alabama.
“21. At the time of the December 6, 1995 crash made the basis of the Underlying Action, Gerald Waller was not an executive officer, director or shareholder of Air Tuskegee, Ltd.
“22. At.the time of the December 6, 1995 crash made the basis of the Underlying Action and effective April 18, 1995 through April 18, 1996, American Eagle Insurance Company (hereinafter ‘American Eagle’) provided a General Liability Airport Policy, Policy No. AFE 0157824-01 (hereinafter ‘the Policy’) to its named insured, Air Tuskegee, Ltd.
*195 “23. The parties stipulate that the Policy is attached hereto as Exhibit ‘A’ and that the same is a true, accurate and complete copy of the Policy referenced in paragraph 22 above. [A copy of the policy is not attached to this opinion.]
“24. The Policy designates Air Tuskegee, Ltd. as a ‘corporation.’
“25 On December 22, 1997, American Eagle was declared insolvent and placed under an order of liquidation by a court of competent jurisdiction in the State of Texas. “26. American Eagle is an ‘insolvent insurer,’ as defined by § 27-42-5(5), Ala.Code [1975].
“27. Alabama law governs the interpretation of the Policy.”
This Court reviews a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala.2002).
In 1980, the Alabama Legislature adopted the Guaranty Act, which was modeled after the Post-Assessment Property and Liability Guaranty Model Act (“the Model Act”).[1] The term “resident,”[2] is not defined in either the Model Act or the Guaranty Act. AIGA’s liability is predicated upon the claimant’s or the insured’s being “a resident of this state at the time of the insured event.” Ala.Code 1975, § 27-42-5(4). The claimants (the Senns and the Dobbinses) were not residents of Alabama on December 6, 1995. On that date, the insured, Air Tuskegee, was a corporation incorporated in Delaware with its principal place of business in Tuskegee, Alabama. AIGA is obligated to Air Tuskegee only to the extent there exists a “covered claim” under the Guaranty Act. A “covered claim” is defined in Ala.Code 1975, § 27-42-5(4), in pertinent part, as follows:
“An unpaid claim ... which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1981 and (i) the claimant or insured is a resident of this state at the time of the insured event....”
In Alabama Insurance Guaranty Ass’n v. Colonial Freight Systems, Inc., 537 So.2d 475 (Ala.1988), this Court held that Colonial Freight, an Alabama corporation with its principal place of business in Knoxville, Tennessee, was a resident of Alabama.
“AIGA argues that a finding by an arbitration panel (submitted by AIGA and [the Tennessee Insurance Guaranty Association]) that Colonial Freight is a resident of Tennessee because of its substantial contacts precludes a finding of residency in Alabama. The language in Jackson Securities & Investment Co. v. State, 241 Ala. 288, 292, 2 So.2d 760, 764 (1941), is very clear on the issue of residence: ‘[A] corporation is a citizen, resident or inhabitant of the state under whose laws it was created.... ’ Because it was incorporated in Alabama, Colonial Freight is a resident of Alabama....”
537 So.2d at 476. Jackson Securities & Investment Co. v. State, 241 Ala. 288, 2 So.2d 760 (1941), on which this Court relied in Colonial Freight, involved a ques *196 tion of residency for purposes of franchise-tax assessments, not residency under the Guaranty Act.
The judgment of the trial court must be affirmed 1) if an insured can be a resident of two states for purposes of the Guaranty Act (this was not decided in Colonial Freight);[3] 2) if Gerald Waller was an insured under American Eagle’s policy on December 6, 1995, because the parties stipulated that Waller was a resident of Alabama on that date; or 3) if this Court overrules Colonial Freight and adopts the principal-place-of-business rule adopted by the majority of the jurisdictions in the United States, which AIGA in its alternate argument requests that we do. The Senns and the Dobbinses in their brief wrote: “Alabama should therefore adopt the principal place of business rule to define corporate residence under the [Guaranty Act].”
Delaware, the state in which Air Tuskegee was incorporated, defines the residency of a corporation under its guaranty act as the state in which the corporation has its principal place of business. Del.Code Ann. tit. 18, § 4205(6)a.(2).
Colonial Freight did not address the possibility of a corporation’s having a dual residency under the Guaranty Act. Ala. Code 1975, § 27-42-12(b), provides, in pertinent part:
“Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured ....”
(Emphasis added.)
In interpreting a Wyoming statute with substantially the same wording,[4] the Wyoming Supreme Court, noting the singular language “place of residence” used in the Wyoming statute held that an insured could have only one residence at the time of the insured event for purposes of entitlement to recovery under the Wyoming guaranty act. Wyoming Ins. Guar. Ass’n v. Woods, 888 P.2d 192, 198 (Wyo.1994).
In Kroblin Refrigerated Xpress, Inc. v. Iowa Insurance Guaranty Ass’n, 461 N.W.2d 175 (Iowa 1990), the Iowa Supreme Court, in interpreting a guaranty statute identical to Alabama’s, held that although a corporation may have different residences for different purposes, it can have only a single residence for purposes of being entitled to recovery under Iowa’s guaranty act. The Iowa Supreme Court rejected the holding in Colonial Freight and noted that our Court had failed to discuss or address the purpose or intent of the relevant Alabama statutes. The Iowa Supreme Court adopted the principal-place-of-business test to determine corporate residency under Iowa’s guaranty act. 461 N.W.2d at 179-80. See Pennsylvania Ins. Guar. Ass’n v. Charter Abstract Corp., 790 F.Supp. 82, 87 (E.D.Pa.1992) (a corporation, like an individual, can be a resident of only one state for purposes of entitle *197 ment to recovery under Pennsylvania’s guaranty act).
We hold that a corporation can be a resident of only one state for purposes of entitlement to recovery under the Guaranty Act based upon the plain language of § 27-42-12(b) and the persuasive authority of Wyoming Insurance Guaranty, Pennsylvania Insurance Guaranty, and Kroblin Refrigerated.
We acknowledge that this Court did not discuss or address in Colonial Freight the purpose or intent of the Legislature in enacting the Guaranty Act. One definition of “resident” may not fit all definitions of “resident.” In American Employers’ Insurance Co. v. Elf Atochem North America, Inc., 157 N.J. 580, 725 A.2d 1093 (1999), the New Jersey Supreme Court thoroughly analyzed the reasons behind the enactment of the Model Act and the relation between those reasons and the residency requirements of the Model Act. 157 N.J. at 586-597, 725 A.2d at 1097-1102.
In Ex parte Krothapalli, 762 So.2d 836, 838 (Ala.2000), this Court noted: “The intent of the Legislature in adopting a statute may be gleaned from considering the language used, the reason and necessity for the statute, and the goals the Legislature sought to accomplish.” The words of the Guaranty Act indicate that the Legislature intended a corporation to be a resident of only one state for purposes of entitlement to any recovery under the Guaranty Act. Unfortunately, the Guaranty Act does not define the word “resident,” so we must look to “the reason and necessity for the statute, and the goals the Legislature sought to accomplish.” The National Conference of Insurance Guaranty Funds explained in an amicus curiae brief filed in Elf Atochem that a guaranty act is part of a “ ‘carefully crafted national approach which, when construed and administered as intended, apportions the cost of funding claims arising under an insurer insolvency in a rational, cohesive, and equitable manner throughout the United States.’ ” 157 N.J. at 597, 725 A.2d at 1102. After consideration of its guaranty act, the New Jersey Supreme Court was persuaded that Elf/Pennwalt, a corporation formed under the laws of New Jersey with its principal place of business in Pennsylvania, should not be considered a resident of New Jersey for purposes of coverage under the New Jersey guaranty act. Id.
At this time, the Colonial Freight definition of residence, i.e., the state of incorporation, creates potential and serious gaps in coverage. For example, in this case, if we retain the Colonial Freight definition, no state provides coverage for Air Tuskegee because Delaware, Air Tuskegee’s state of incorporation, defines a corporation’s residence (for purposes of its insurance guaranty association) as the state of the corporation’s principal place of business. DeLCode Ann. tit. 18, § 4205(6)(a)(2). Therefore, under the definition presently used in Alabama, neither Alabama nor Delaware provides coverage for Air Tuskegee. Yet if a corporation were incorporated in Alabama and had its principal place of business in Delaware, both states would provide coverage. This scenario destroys the unity intended by Alabama’s adoption of an AIGA, which is paramount for the multistate system contemplated by the Model Act to be effective.
This Court has stated that the Guaranty Act “only provides protection from the insolvency of insurers ‘licensed to transact insurance in this State.’ ” Alabama Ins. *198 Guar. Ass’n v. Pierce, 551 So.2d 310, 312 (Ala.1989). Under the statutory scheme, the premiums paid by Alabama insurers generate revenue for AIGA. The principal-place-of-business rule creates a relationship between these premiums paid to the State of Alabama and the claims paid. An insurance company that conducts business in this State, by providing insurance in Alabama, pays premiums to AIGA; thus the insured, regardless of where it is incorporated, should enjoy the benefits of AIGA coverage. Retention of the place-of-incorporation rule would result in AIGA’s being unjustly enriched. For example, Air Tuskegee paid insurance premiums to American Eagle, which paid AIGA fees; however, under the rule enunciated in Colonial Freight it would not receive protection under the Guaranty Act.
For these reasons, this Court adopts the principal-place-of-business rule in accord with the definition adopted in the Model Act and by other states. This definition of a corporation’s residence is limited to the AIGA context. To the extent it contradicts this opinion, Colonial Freight is hereby overruled. Thus, the rule in Jackson is not affected. The trial court’s judgment is affirmed.
AFFIRMED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.

. In 1969 the National Association of Insurance Commissioners developed the Post-Assessment Property and Liability Insurance Guaranty Model Act on which many states’ guaranty acts are based.

. The Model Act, as now amended, defines "residence,” as it relates to an insured corporation, as the state where the principal place of business of the corporation is located.

. The Senns and the Dobbinses contend that AIGA did not argue this issue before the trial court. They are not correct The crux of AIGA's motion for a summary judgment was that Air Tuskegee was a resident only of Delaware for purposes of the Guaranty Act. In opposition to this, the Senns and the Dobbins-es argued that Air Tuskegee could be deemed a resident of more than one state for purposes of the Guaranty Act. Certainly, this Court could affirm the judgment of the trial court on this issue. See Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988).

. The Wyoming statute provides that the claimant "shall seek recovery first from the association of the insured’s place of residence.” Wyo. Stat. Ann. § 26 — 31—111 (b).